UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                   :

AUTOMATED MANAGEMENT SYSTEMS, INC.,

                                   :    **Case No. 16 Civ ___**

                Plaintiff,

                                   :    **COMPLAINT**

       -AGAINST-                 :    **<u>AND JURY DEMAND</u>**

                                   :

RAPPAPORT HERTZ CHERSON ROSENTHAL,
P.C., WILLIAM RAPPAPORT, STEVEN M. :
HERTZ, ELIOT J. CHERSON, MICHAEL C.
ROSENTHAL, and BRANKO RAKAMARIC,    :

                  Defendants.    :
---------------------------------------X

      Plaintiff, Automated Management Systems, Inc. ("AMSI"), by its attorneys, Greenfield Stein & Senior, LLP, hereby alleges as follows:

      1.   AMSI makes and licenses copyrighted software products. AMSI's most successful product is its Landlord-Tenant Legal System ("LTLS") software.

      2.   Defendant Rappaport Hertz Cherson Rosenthal, P.C. ("RHCR") has been a customer of AMSI and a licensee with respect to the LTLS software for about 25 years.

      3.   At present, the relationship between AMSI and RHCR is governed by a Software Subscription Agreement (the "Agreement") dated as of January 2, 2007. A copy of the Agreement is annexed as Exhibit A.

4.   AMSI recently discovered that RHCR and the individual defendants herein were engaging in unlawful conduct in violation of the Agreement.

5.   Included among that unlawful conduct was copying the LTLS, modifying the LTLS, and allowing AMSI's competitor, Branko Rakamaric (a defendant herein), to have access to the LTLS software, all in violation of the Agreement.

6.   The LTLS software is copyrighted and any unauthorized disclosure or use of it is strictly prohibited by the Agreement (Agreement, §3(d)).

7.   The defendants have violated the Agreement and AMSI's copyrights by their actions as described above.

8.   Accordingly, pursuant to §3(d) of the Agreement, RHCR's license to use the LTLS software has automatically terminated.

9.   The defendants' actions have caused, and are causing, harm to AMSI and constitute a misuse of AMSI's intellectual property.

10.  To prevent this continued unfair and unlawful exploitation of AMSI's proprietary technology, AMSI seeks an injunction against further misappropriation and infringement of its intellectual property, and awards of actual damages, statutory

damages, punitive damages, and/or its attorney's fees and costs of suit.

## JURISDICTION AND VENUE

11.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 inasmuch as AMSI is asserting a civil cause of action arising under the laws of the United States.

12.   In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1338 which provides that the District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to copyrights.

13.   Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because the defendants have done business in this judicial district, have breached a contract with a substantial impact in this district, have engaged in unfair competition in this district, and continue to commit such acts in this district.

14.   In addition, venue is proper in this judicial district because the Agreement provides that RHCR "expressly consents to the jurisdiction and venue in State and Federal Courts located within the State of New York, County of New York over any disputes arising from or related in any manner to this Agreement." Agreement, §6(a).

## THE PARTIES

15.   AMSI is a corporation organized and existing under the laws of the State of New York with its principal address at 160 Broadway, Suite 902, New York, New York 10038.

16.   Defendant RHCR is a law firm which, upon information and belief, maintains its principal place of business at 118-35 Queens Boulevard, 9th Floor, Forest Hills, New York 11375.

17.   Upon information and belief, RHCR is a professional corporation organized and existing under the laws of the State of New York.

18.   Upon information and belief, the first four named individual defendants, William Rappaport, Steven M. Hertz, Eliot J. Cherson and Michael C. Rosenthal, are lawyers and members of the firm of RHCR.

19.   Upon information and belief, defendant Branko Rakamaric resides at 61 Primrose Drive, New Hyde Park, New York 11040 and is employed at the Sterling National Bank in New York City as a business analyst and officer.

20.   Upon information and belief, Branko Rakamaric has a side business as an information technology services provider. Among other things, upon information and belief, he provides legal system software similar to the software provided by AMSI but inferior to the LTLS software in many respects.

4

21.   Upon information and belief, RHCR improperly gave Rakamaric access to AMSI's LTLS software, as described hereinafter, in clear and flagrant violation of the Agreement thereby endangering the security of AMSI's proprietary software and enabling Rakamaric to copy and misappropriate it.

## GENERAL ALLEGATIONS

22.   RHCR has utilized the LTLS software for about 25 years pursuant to various contracts, the most recent of which was signed in 2007 (the "Agreement").

23.   Until recently, the working relationship under the Agreement was going smoothly without any major problems.

24.   In May of 2016, RHCR experienced some problems with the LTLS software.

25.   RHCR notified AMSI of the problems, which included various errors such as difficulties reading files from the server and corrupted index files.

26.   RHCR requested AMSI's assistance in resolving these problems.

27.   When AMSI looked into the problems, AMSI discovered that there was an unauthorized server on the RHCR network.   The server which had been installed by AMSI for use by RHCR was entitled "RHCR-NYAPP."

28.   In May of 2016, AMSI discovered that there was an additional <u>secret</u> <u>server</u>, which had never been made known to AMSI, on the RHCR network.

29.   That additional secret server was labeled "RHCR-APPSRV".   Upon further investigation into the contents of that server, AMSI discovered that it included software from the LTLS system.

30.   In addition, it included files which suggested the use of a Microsoft database for purposes of developing and altering the LTLS software.

31.   The very creation of the RHCR-APPSRV server constituted a violation of the Agreement because it entailed a copying and transferring of the LTLS software, which is not permitted.

32.   The modification of the LTLS software by RHCR and, upon information and belief, its information technology provider, defendant, Branko Rakamaric, also constituted a violation of the Agreement.

33.   In addition, the very fact that Branko Rakamaric was permitted to have access to the LTLS software was a violation of the Agreement.   Section 3(f) of the Agreement provides that RHCR must keep the software confidential and may not disclose it

to third parties without the written consent of AMSI, which was neither sought nor obtained.

34.   The above-described actions constituted violations of AMSI's copyrights.

35.   Copies of the copyright registration documents pertaining to the LTLS software are annexed hereto as Exhibit B.

## FIRST CLAIM FOR RELIEF (Copyright Infringement – All Defendants)

36.   AMSI incorporates herein by reference each and every allegation in the preceding paragraphs.

37.   The LTLS software is an original work of authorship created by AMSI constituting copyrightable subject matter.

38.   AMSI is the owner of United States copyright registrations TS7-232-319 (Landlord & Tenant Legal System) and TS7-232-302 (L & T Legal System).   The effective dates of AMSI's copyright registrations predate the commencement of infringement by the defendants.

39.   The defendants have reproduced the copyrighted works in violation of AMSI's exclusive rights under the Copyright Act.   AMSI has not licensed or otherwise authorized the defendants' reproduction of the copyrighted work.

40.   AMSI is informed and believes, and on that basis alleges, that the defendants' infringement of AMSI's copyrights in

7

the copyrighted works is, and continues to be, intentional, willful and in conscious disregard of AMSI's rights.

41. AMSI has sustained economic damages as a result of the defendants' infringement of AMSI's copyrights in an amount to be proven at trial.

42. AMSI is entitled to recover the actual damages it has suffered and/or any profits gained by the defendants that are attributable to their acts of copyright infringement pursuant to 17 U.S.C. § 504 (b). Alternatively, AMSI is entitled to the maximum statutory damages allowed under 17 U.S.C. § 504 (c) based on the defendants' willful acts of copyright infringement. AMSI will make its election at the appropriate time before final judgment is rendered.

43. Pursuant to 17 U.S.C. § 502, AMSI is entitled to an injunction against the defendants' continuing reproduction and misuse of AMSI's copyrighted material.

44. AMSI is further entitled to recover its full costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## SECOND CLAIM FOR RELIEF (Breach Of Contract - RHCR)

45. AMSI incorporates herein by reference each and every allegation in the preceding paragraphs.

46.  RHCR has breached the Agreement by, among other things, transferring and copying the LTLS software without authorization, and altering and modifying the LTLS software without permission.

47.  RHCR further has breached the Agreement by permitting AMSI's competitor, defendant Branko Rakamaric, to have access to the LTLS software without the written consent of AMSI and, indeed, without any notification whatsoever to AMSI.

48.  Upon information and belief, AMSI alleges that RHCR has engaged in other and further actions that violate the Agreement.

49.  As a direct and proximate result of RHCR's breach of the Agreement, AMSI has suffered economic injury and damages in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF (Unfair Competition – All Defendants)**

50.  AMSI incorporates herein by reference each and every allegation in the preceding paragraphs.

51.  The defendants' business practices as alleged above constitute unfair competition and unfair business practices and business acts in violation of the common law of the State of New York.

52.   Pursuant to the law of the State of New York, AMSI is entitled to enjoin these practices.

53.   In addition, pursuant to the law of the State of New York, AMSI is entitled to recover the damages caused to it by the defendants' unfair competition, unfair business practices and unfair business acts.

54.   The actions of the defendants in engaging in unfair competition and unfair business practices and acts were wanton, malicious and in callous disregard of the rights of AMSI.

### PRAYER FOR RELIEF

Wherefore, in consideration of the foregoing, AMSI prays for judgment as follows:

1.   Awarding AMSI actual damages and/or any profits gained by defendants and/or statutory damages for copyright infringement as determined at trial;

2.   Awarding AMSI a permanent injunction against any further usage, sales or dissemination by the defendants of the LTLS software or any software containing any element of the LTLS software;

3.   Awarding damages sustained as a result of RHCR's breach of the Agreement;

4.   Awarding AMSI actual damages as sustained as a result of the defendants' unfair competition;

5.    Awarding AMSI punitive damages in an amount to be
      determined at trial;

6.    Awarding AMSI its reasonable attorney's fees and
      costs; and

7.    Awarding AMSI such other and further relief as the
      Court deems appropriate.

## DEMAND FOR JURY TRIAL

AMSI hereby demands a trial by jury of all issues so triable.

Dated:    New York, New York
          June 21, 2016

                              Respectfully submitted,

                              GREENFIELD STEIN & SENIOR, LLP


                        By: _____
                              Paul T. Shoemaker (PS5388)
                              *Attorneys for Plaintiff*
                              *Automated Management Systems Inc.*
                              600 Third Avenue
                              New York, NY 10016
                              (212) 818-9600
                              pshoemaker@gss-law.com

# EXHIBIT A

# *SOFTWARE SUBSCRIPTION AGREEMENT*

THIS SOFTWARE SUBSCRIPTION AGREEMENT (this "Agreement") is made as of January 2, 2007 between AUTOMATED MANAGEMENT SYSTEMS, INC. hereinafter referred to as AMSI ("LICENSOR") on the one hand, and Rappaport Hertz Cherson Rosenthal, P.C., hereinafter referred to as ("End User"), on the other.

Whereas, LICENSOR develops proprietary computer programs and sells use subscription licenses for such proprietary computer programs together with or apart from accompanying copyrighted material and documentation and

Whereas, "End User" desires to obtain the benefits thereof and, in return for which, is willing to abide by the obligations and fee agreements applicable to AMSI's use licenses in AMSI's proprietary computer programs.

NOW THEN, for good and valuable consideration, including but not limited to the subscription license granted in accordance with this Agreement AMSI hereby grants to End User a non-exclusive, non-transferable and limited license to use the software, strictly in accordance with the software operating methodologies described within the software and in accordance with the instant agreement, subject to, but not limited to, the following terms and conditions:

## 1. DEFINITIONS

a. "Software" means AUTOMATED MANAGEMENT SYSTEMS, INC.'S (Hereinafter "AMSI") "LANDLORD-TENANT LEGAL SYSTEM" Software with the current functionality as provided by AMSI. It also includes any accompanying instructions, documentation, periodic upgrades, and other related materials.

b. "Use" means storing, loading, installing, executing, or displaying the Software on a single device or a series of devices, and use of the Software by way of End User's server, which allows the use of the Software by all users in that environment.

c. "Product" means the aforesaid Software product and its documentation as built at the time of the installation and periodic updates thereto.

d. "License" means the Software license grant and general license terms set forth herein.

e. "Terms of Use" means any and all prohibitions and restrictions on Use, including any activities engaged in End user in any environment available via End User's server(s).

f. "Environment" means End User's network Workgroup or Domain.

g. "End User" (sometimes referred to as "you") means the individual or entity who purchases the subscription under this Agreement. Also referred to as 'Subscriber".

h. "Customer" means End User and any entity or individual who uses the Software through End User's subscription.

I. "This Agreement" means this entire Software Subscription and License Agreement.

j. "Subscriber" (sometimes referred to as "you") means the individual or entity who purchases the subscription under this Agreement. Also referred to as 'End User".

1

k. "Upgrade" means a new release of the Product that includes a substantial new facility or capability.

## 2. SUBSCRIPTION TERMS

a. As part of this subscription, Subscriber receives a License as described below. AMSI will provide updates to the Software, such as correction of "bugs" and certain limited improvements to existing functionality of the Software as AMSI may choose to provide. The subscription also includes the right to receive any Upgrades or Reissues by AMSI. AMSI will, in its own discretion, determine whether and on what terms any Upgrade, Reissue or new product release will be made available to existing Subscribers.

b. The subscription entitles Customer to receive telephonic technical support relating to the Software only. Said telephonic technical support does not include matters relating to hardware or networking in End User's environment.

c. The end user will be charged pursuant to the fee schedule, negotiated and agreed to for good and valuable consideration, as annexed hereto in Schedule "A". If you accept this Agreement and undertake this subscription, you are authorizing AMSI to, issue invoices as applicable, in approximately 30-day intervals, for the amounts due pursuant to schedule "A" hereof based upon your monthly rental. If for any reason any of our charges for these fees remain unpaid or in dispute for a period exceeding 90 days, your subscription and license to Use the Software will automatically terminate *after 60 days* notice. It is your sole responsibility to ensure that payment is made and to notify AMSI (via the AMSI Help Desk) of any different billing instructions if you cancel or wish to change the notification method and/or address for our billing purposes.

d. Either party may terminate the subscription and Software License on *60 days* prior notice for failure to comply with any terms of this Agreement, including Software License terms or Terms of Use. Immediately upon termination, Customer will no longer have any right to Use the Software and AMSI shall, as such, be permitted to de-install the Software from Customer's computer system by remote access or other means.

e. Subscriber may not assign or transfer this Agreement. Any such attempted assignment or transfer will be null and void. AMSI may terminate this Agreement in the event of any such attempted assignment or transfer.

f. By accepting this Agreement and purchasing this Subscription, Subscriber represents and warrants that, if a natural person, Subscriber is at least 18 years of age and/or is otherwise legally able to enter into a binding contract. If the end user is a business entity, the signatory hereto represents that (s)he has the requisite authority and capacity to bind said business entity hereto. Additionally, Subscriber represents and warrants that Subscriber is not a citizen of Cuba, Iran, Libya, North Korea, Syria or Sudan or a citizen of any other country that is, or an entity that is restricted by the United States government from receiving certain types of software.

g. The Subscription will continue on a month-to-month basis at the then prevailing rates established by AMSI which may differ from those described herein but such Subscription will remain subject to all other terms of this Agreement. AMSI reserves the right to adjust the monthly subscription fee(s) at any time after one year upon sixty days notice to End User. Said notice shall be delivered in accordance with the notice provisions of this agreement. This agreement may be cancelled upon 90 days written notice to either party.

h. Customer may only make a back-up copy of the software, if AMSI did not make available such copy, *a disaster recovery location copy (DRL) and a copy on the web access server* and with the specific understanding that End User is not permitted to maintain multiple copies of the software for redundant system protection without the written consent of AMSI. AMSI retains any and all rights in copies made for back-up purposes. Re-Installation may only be effected by AMSI for no fee. No re-installation may be

2

effected by either End User or any Third Party Vendor. End User is not permitted to re-install the software on an different server or computer or within a different environment without the written consent of AMSI. Re-Installation shall be performed by AMSI at no charge. Request for any authorizations hereunder shall be made in writing pursuant to the notice provisions of this agreement.

i. Training in the operations and use of the software, including but not limited to the training of End User Personnel in the areas of Direct supervisory functions relating to System Operation, use Functions relating to the system are included in the rental price listed in Schedule A.

j. End User shall provide AMSI with remote access to End User's Environment at all times. Access codes for such access and/or installation of necessary software within End User's Environment, workgroup or domain shall be made within a reasonable time of AMSI's request. AMSI access will be strictly related to AMSI's software files and will respect the confidentiality of other Clients files. AMSI will not access files not related to AMSI's system. Said remote access shall be used by AMSI to effect certain system functions including but not limited to Updates and corrections, Printing of Billing Report(s), troubleshooting, protection of security devices, continuing activation and polling and metering of usage. End User hereby acknowledges that the refusal to provide the said remote access shall prohibit AMSI from properly billing End User for Usage and that were said denial of access to continue, AMSI would be unable to quantify the Usage for said effected periods. Accordingly, End User agrees that in the event that remote access is ***intentionally and purposely*** refused for a period exceeding 5 days after written request for such access pursuant to the notice agreements hereof, that AMSI shall be entitled to the sum of $250.00 per day as liquidated damages and not as penalty for each day that access is withheld unless refusal of access is of no fault of users. Such liquidated damages shall continue for a period of 55 days (including non-business days) at which time the software shall cease to be activated pursuant to the Software's internal controls. ***There shall be no charges to End User if access is denied to AMSI due to connectivity issues with ISP of if access is denied because of mechanical malfunctions.***

k. Client or AMSI may terminate this agreement 90 Days from written notice of such termination. Upon termination, AMSI shall have the right to remove the Software from End User's environment.

l. Notifications pursuant to this agreement shall be directed to, via Certified mail, Return receipt requested ***and by*** facsimile transmission:

If to AMSI: AMSI Attn.: James J. Traina, 160 Broadway, Ste 902, New York NY 10038 Fax :( 212) 608-6055.

If to End User: Bill Rappaport, Steve Hertz, or, and Rappaport Hertz Cherson Rosenthal, P.C.118-35 Queens Blvd, Ninth floor, Forest Hills, NY 10016 Fax 718-261-7336

## 3. LICENSE GRANT AND TERMS

a. During the Term of Agreement, subject to continuing payment of monthly fees as set forth herein and to compliance with Terms of Use and the Software License, Subscriber will have a license that entitles End User use of the Software within End User's environment as defined herein. If Subscriber allows another entity or individual to Use the Software, Subscriber will be liable for compliance with this Agreement, and for any violations by that user of the Terms of Use or Software License.

b. The Software is owned, patented and copyrighted, as applicable, by AMSI. The Software License confers no title or ownership and is not a sale of any rights in the Software. Customer is granted only the right to Use the Software without right of sublicense.

c. Customer must retain all patent, copyright notices and other proprietary legends in or on the original Software. Customer may not remove from the Software, or alter, any of the AMSI trademarks, trade

3

names, logos, patent or copyright notices or markings, or add any other notices or markings to the Software. Customer may not copy the Software onto any public or distributed network.

d. Customer may not modify, reverse engineer, disassemble, decompile or otherwise attempt to access or determine the source code of the Software, copy, reproduce or distribute the Software in any way in whole or in part or create any derivative work based on the Software. Any use of these materials in any other work environment or networked computer environment, including remote usage of the system, for any purpose is prohibited. The Software is copyrighted and any unauthorized use of it is prohibited. If Customer breaches any of these terms, the License to Use the Software automatically terminates and Customer must immediately destroy any installed or printed materials.

e. Customer may not export or re-export this software or any copy or adaptation in violation of any applicable laws or regulations. Without limiting the generality of the foregoing, software, technology or services provided under this license agreement may not be exported, re-exported, transferred or downloaded to or within (or to a national resident of) countries under U.S. economic embargo including the following countries: Cuba, Iran, Libya, North Korea, Sudan and Syria. This list is subject to change.

f. Customer agrees that Software contains proprietary information including trade secrets, know how and confidential information that is the exclusive property of AMSI. During the period this Agreement is in effect and at all times after its termination, Customer and its employees and agents shall maintain the confidentiality of this information and not sell, license, publish, display, distribute, disclose or otherwise make available this information to any third party nor use such proprietary information concerning the Software, including any Database files, Source Code, Dynamic Link Libraries ("DLL"s), Application Program Interfaces ("API"s), user manuals and screens, to persons not an employee of Customer without the prior written consent of AMSI.

g. For a period of five years following any termination, the End User shall not, directly or indirectly hire, solicit, or encourage to leave AMSI 's employment, any employee, consultant, or End User of AMSI or hire any such employee, consultant, or Company who has left AMSI's employment or contractual engagement within five years of such employment or engagement. The parties hereto acknowledge that the knowledge and skills of such employee(s), consultant(s), or Company(s) are of a special, unique, unusual, and extraordinary character which gives them a peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in any action at law, and the breach by the End User of any of the provisions of this Agreement will cause AMSI irreparable injury and damage. The End User expressly agrees that AMSI shall be entitled to injunctive and other equitable relief in the event of, or to prevent, a breach of any provision of this Agreement by the End User. Resort to such equitable relief, however, shall not be construed to be a waiver of any other rights or remedies that AMSI may have for damages or otherwise. The various rights and remedies of AMSI under this Agreement or otherwise shall be construed to be cumulative, and no one of them shall be exclusive of any other or of any right or remedy allowed by law.

## 4. DISCLAIMERS AND LIMITATIONS

a. TO THE EXTENT ALLOWED BY LAW, THIS SOFTWARE IS PROVIDED TO YOU "AS IS" WITHOUT WARRANTIES OR CONDITIONS OF ANY KIND, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED, AMSI SPECIFICALLY DISCLAIMS ANY IMPLIED WARRANTIES, NON-INFRINGEMENT, TITLE, ACCURACY OF INFORMATIONAL CONTENT. NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY AMSI OR AMSI'S AUTHORIZED REPRESENTATIVES SHALL CREATE A WARRANTY. AMSI DOES NOT REPRESENT THAT THE SOFTWARE WILL BE OPERATIONAL AT ALL TIMES OR WILL BE FUNCTIONING PROPERLY WHEN YOU OR OTHERS WISH TO ACCESS THE FUNCTIONALITY OF THE SOFTWARE. THE SOFTWARE MAY BE UNAVAILABLE AT TIMES FOR MAINTENANCE OR FOR A VARIETY OF OTHER REASONS. WE ARE NOT LIABLE TO YOU FOR ANY PERIODS OF

UNAVAILABILITY AND YOU WILL NOT BE ENTITLED TO ANY REFUNDS FOR THOSE PERIODS WHEN THE SOFTWARE IS NOT AVAILABLE OR IS NOT FUNCTIONING PROPERLY. Some jurisdictions do not allow exclusions of implied warranties or conditions, so the above exclusion may not apply to you to the extent prohibited by applicable laws.

b. EXCEPT TO THE EXTENT PROHIBITED BY LAW, IN NO EVENT WILL AMSI OR ITS SUBSIDIARIES, AFFILIATES, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, CONTRACTORS OR SUPPLIERS BE LIABLE FOR DIRECT, INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, OR OTHER DAMAGES (INCLUDING LOST PROFIT, LOST DATA, OR DOWNTIME COSTS), ARISING OUT OF THE USE, INABILITY TO USE, OR THE RESULTS OF USE OF THE SOFTWARE, WHETHER BASED IN WARRANTY, CONTRACT, TORT OR OTHER0 LEGAL THEORY, AND WHETHER OR NOT AMSI WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. AMSI's and its suppliers' entire liability and your exclusive remedy shall be, at AMSI's option from time to time exercised subject to applicable law, (a) return of the price paid (if any) for the Product, or (b) repair or replacement of the Product.

c. NOTE, EXCEPT TO THE EXTENT ALLOWED BY LOCAL LAW, THESE WARRANTY TERMS DO NOT EXCLUDE, RESTRICT OR MODIFY, AND ARE IN ADDITION TO, THE MANDATORY STATUTORY RIGHTS APPLICABLE TO THE LICENSE OF THE SOFTWARE TO YOU; PROVIDED, HOWEVER, THAT THE CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS IS SPECIFICALLY DISCLAIMED AND SHALL NOT GOVERN OR APPLY TO THE SOFTWARE PROVIDED IN CONNECTION WITH THIS WARRANTY STATEMENT.

d. AMSI DOES NOT PROMISE THAT THE SOFTWARE WILL FUNCTION ON OR BE COMPATIBLE WITH YOUR COMPUTER SYSTEM. AMSI DOES NOT PROMISE OR WARRANT THAT YOUR COMPUTER SYSTEM WILL BE COMPATIBLE WITH THE FUNCTIONALITY OF THE SOFTWARE. IT IS CUSTOMER'S SOLE RESPONSIBILITY TO ENSURE THAT CUSTOMER'S COMPUTER SYSTEM AND INTERNET ACCESS ARE COMPATIBLE WITH THE SOFTWARE AND THE SERVER FUNCTIONALITY.

## 5. PRIVACY POLICY

a. We store and preserve End User Content and information in accordance with established policy.  AMSI shall endeavor to not disclose End User's information to the fullest extent.

## 6. GENERAL PROVISIONS

a. This Agreement and any disputes arising hereunder shall be governed by the laws of the State of New York, United States of America, without regard to conflicts of laws principles. Customer hereby expressly consents to the jurisdiction and venue in State and Federal Courts located within the State of New York, County of New York over any disputes arising from or related in any manner to this Agreement.

b. If any term or provision herein is determined to be illegal or unenforceable, the validity or enforceability of the remainder of the terms or provisions herein will remain in full force and effect. Failure or delay in enforcing any right or provision of this Agreement shall not be deemed a waiver of such right or provision with respect to any subsequent breach. Provisions herein, which by their nature extend beyond the termination of any license of Software, will remain in effect until fulfilled.

c. This Agreement is the final, complete and exclusive agreement between the parties relating to the subject matter hereof, and supersedes any previous communications, representations or agreements between the parties, whether oral or written, regarding transactions hereunder. Customer's additional or different terms and conditions will not apply. This Agreement may not be changed except by an amendment signed by an authorized representative of each party.

d. As a further inducement to AMSI to make and enter into this Software Subscription Agreement and in consideration hereof, AMSI and End User covenant and agree that in any action or proceedings brought on, under or by virtue of this Software Subscription Agreement, AMSI and End User shall and do hereby waive trial by jury.

e. Because AMSI granting of the instant Software Subscription Agreement to End user is unique, and because End User had access to and has become acquainted with the Proprietary Information of AMSI, and because any breach by End User of any of the restrictive covenants contained in this Agreement would result in irreparable injury and damage for which money damages would not provide an adequate remedy, AMSI shall have the right to enforce the obligations set forth in this Agreement by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that AMSI may have for a breach, or threatened breach, of the provisions of this Agreement. End User agrees that in any action in which AMSI seeks injunction, specific performance or other equitable relief, End User will not assert or contend that any of the provisions of this Agreement are unreasonable or otherwise unenforceable.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first above written.

AMSI:

By: _____
Name: James J Traina
Title:President

and Rappaport Hertz Cherson Rosenthal, P.C.
("End User"):

By: _____
Name:
Title:

6

## Schedule A

**Note: These costs do not include any applicable federal, state, or local sales or use taxes.**

Monthly Rental: $3,045.00 per month (10% above present cost)*
EDI System: $165.00 per month (10% above present cost)*
E-Mail System $165 per month (10% above present cost)

LT Quest
Flat fee $600.00 per month

\*  *This fees go into effect when these new programs/systems are installed.  The current prices for the current system remain in effect until such time.*

# EXHIBIT B

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

**TX 7-232-319**

**Effective date of
registration:**

September 3, 2010

---

## Title

**Title of Work:** Landlord & Tenant Legal System

## Completion/Publication

**Year of Completion:** 2007

**Date of 1st Publication:** November 1, 2007    **Nation of 1st Publication:** United States

## Author

■    **Author:** Automated Management Systems, Inc.

**Author Created:** computer program, screen displays

**Work made for hire:** Yes

**Citizen of:** United States    **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Automated Management Systems, Inc.

160 Broadway, Suite 902, New York, NY, 10038, United States

## Limitation of copyright claim

**Material excluded from this claim:** Program was written using FoxPro ver. 9 authoring tool, which is not subject
to this claim; program contains text of public domain legal forms.

**New material included in claim:** computer program, screen displays

## Rights and Permissions

**Organization Name:** Automated Management Systems, Inc.

**Telephone:** 212-608-5919

**Address:** 160 Broadway

Suite 902

New York, NY 10038  United States

## Certification

**Name:** Bruce D. Katz, Esq.

**Date:** September 2, 2010

---

**Correspondence:** Yes

**Copyright Office notes:** Regarding deposit: Later version of work accepted under grant of special relief per 37 C.F.R. 202.20(d)



# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

**TX 7-232-302**

**Effective date of registration:**

September 3, 2010

---

## Title

**Title of Work:** L&T Legal System

## Completion/Publication

**Year of Completion:** 1998

**Date of 1st Publication:** September 1, 1998 **Nation of 1st Publication:** United States

## Author

**Author:** Automated Management Systems, Inc.

**Author Created:** computer program, screen displays

**Work made for hire:** Yes

**Citizen of:** United States **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Automated Management Systems, Inc.

160 Broadway, Suite 902, New York, NY, 10038, United States

## Limitation of copyright claim

**Material excluded from this claim:** Program was written using FoxPro ver. 2.6 authoring tool, which is not subject to this claim; program contains text of public domain legal forms.

**New material included in claim:** computer program, screen displays

## Rights and Permissions

**Organization Name:** Automated Management Systems, Inc.

**Telephone:** 212-608-5919

**Address:** 160 Broadway

Suite 902

New York, NY 10038 United States

## Certification

**Name:**  Bruce D. Katz, Esq.

**Date:**  September 1, 2010

---

**Correspondence:**  Yes

**Copyright Office notes:**  Regarding deposit: Later version of work accepted under grant of special relief per 37 C.F.R. 202.20(d)