UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

AUTOMATED MANAGEMENT
SYSTEMS, INC.,

        Plaintiff,

 -v-                                                 No.   1:16-CV-04762-LTS-KNF

RAPPAPORT HERTZ CHERSON
ROSENTHAL, P.C., WILLIAM
RAPPAPORT, STEVEN M. HERTZ, ELIOT
J. CHERSON, MICHAEL C. ROSENTHAL,
BRANKO RAKAMARIC, and BEN
WACHTER,

        Defendants.

-------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

Plaintiff AMSI ("AMSI") brings this renewed motion (docket entry no. 305 (the "Motion")) to keep filed under seal the unredacted versions of certain documents in connection with Defendants' motion for summary judgment, and to maintain redactions to publicly filed versions of the same.  (Docket entry nos. 216, 220, 235, 236, 238, and 240.)  Defendants Rappaport Hertz Cherson Rosenthal, P.C. ("RHCR"), William Rappaport, Steven M. Hertz, Eliot Cherson, Michael C. Rosenthal, Branko Rakamaric, and Ben Wachter (collectively, the "Defendants") have not opposed the motion, and Plaintiff represents that Defendants "have already agreed to the matters raised in [the] motion" by entering into a previously filed stipulated confidentiality order (docket entry no. 192, the "Protective Order"), which allows either party to designate certain material "Confidential Information" (<u>id.</u> ¶ 1) and requires any party seeking to file such information to first move the Court to do so under seal.  (<u>Id.</u> ¶ 5).  The Court has

carefully considered the AMSI's submissions and arguments and, for the following reason, grants the Motion, but directs AMSI to provide a basis for continued sealing of docket entry nos. 244, 254, and 256 within 21 days.

### BACKGROUND

General familiarity with the facts and procedural context in this case is presumed.

AMSI moves for an order maintaining the current applicable party-sealing restriction level for the following documents: the declaration of Branko Rakamaric, filed by Defendants (docket entry nos. 216 (the "Unredacted Rakamaric Decl.") and 220 (the "Redacted Rakamaric Decl.") (together, the "Rakamaric Decl.")), the declaration of James Traina, filed by AMSI (docket entry nos. 235 (the "Unredacted Traina Decl."), 236 (the "Redacted Traina Decl."), and 240 (the "Corrected Unredacted Traina Decl.") (together, the "Traina Decl.")), and AMSI's memorandum of law opposing Defendants' motion for summary judgment (docket entry no. 238 (the "AMSI Summary Judgment Opposition")).  The Motion does not address three other filings (docket entry nos. 244, 254, and 256) that are currently docketed under seal.

AMSI and Defendants' prior motions to seal (docket entry nos. 233 and 215, respectively) and their supporting declarations, which concerned the same documents at issue here, argued that the documents were "confidential documents" (docket entry no. 219), representing that the documents contained "confidential business records" (docket entry no. 233) and "a great deal of confidential information" (docket entry no. 234 at 2).  Noting that the parties failed to specifically explain in their motions why the information contained therein should be sealed from public view, the Court denied both motions without prejudice to the filing of

renewed motions that "proffer the requisite legal and factual bases for their contention that sealing is" necessary in this case.  (Docket entry no. 302 at 30.)

In its renewed motion, AMSI provides greater detail as to the contents of each of the documents to be considered and as to the basis for maintaining the current levels of sealing. AMSI proffers that the Unredacted Rakamaric Declaration, and its exhibits, "contain[] the entire source code of disputed portions of AMSI's software along with a description thereof," that the Unredacted Traina Declaration contains "AMSI's compendium of Email Alerts, AMSI's data dictionary, and a description of the architecture and how various subsystems of AMSI's software functions," and that the AMSI Summary Judgment Opposition "contains similar descriptions." (Motion at 4.)

## DISCUSSION

The public and the press have a qualified First Amendment right to access judicial documents and proceedings, which may be overcome in certain circumstances, allowing a court to permit a party to file documents under seal.  See Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91-92 (2d Cir. 2004).  To determine whether sealing is appropriate, the Court first must determine whether the relevant document is a "judicial document" that has "historically been open to the press and general public."  Id. at 92.  Here, the relevant documents are supporting documents relating to a summary judgment motion, and are therefore considered judicial documents.  See Uni-Systems, LLC v. United States Tennis Association, Inc., No. 17-CV-147-KAM-CLP, 2021 WL 7907948, at *2 (E.D.N.Y. Mar. 31, 2021) ("For example, summary judgment motions and related supporting documents . . . are judicial documents because they directly affect adjudication or determine substantive rights.") (citing Newsday LLC v. Cty. Of

Nassau, 730 F.3d 156, 164 (2d Cir. 2013)).  As a result, these documents are subject to a presumption of public access.  See Lugosch v. Pyramid Co. of Onondoga, 435 F.3d 110, 121 (2d Cir. 2006) (noting that "a strong presumption of access attaches" to "judicial documents"). However, this presumption may be overcome, and sealing may be allowed, "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." (Id. at 120.)  The party seeking to file sealed documents "bears the burden of showing that higher values overcome the presumption of public access." Alexandria Real Est. Equities, Inc. v. Fair, No. 11-CV-3694-LTS, 2011 WL 6015646, at *2 (S.D.N.Y. Nov. 30, 2011).  In the context of business documents like those at issue here, a party may overcome the presumption of access upon a showing of higher values such as "the protection of sensitive, competitive, or proprietary business information."  Whittaker v. MHR Fund Mgmt. LLC, No. 20-CV-7599-AT, 2021 WL 4441524, at *2 (S.D.N.Y. Sept. 28, 2021). Finally, the Court should consider whether the sealing request is "narrowly tailored" to protect these higher values, and whether the proposed redactions are overly broad.  SEC v. Telegram Grp. Inc., No. 19-CV-9439-PKC, 2020 WL 3264264, at *1 - *2 (S.D.N.Y. Jun. 17, 2020).

       As the party seeking sealing, AMSI bears the burden of demonstrating "higher values" to overcome the presumption of access and justify continued sealing.  To overcome this presumption, AMSI proffers that the materials under consideration contain valuable and confidential trade secrets, of which AMSI is the sole owner, and the disclosure of which would place AMSI at a significant competitive disadvantage.  (See, e.g., Motion at 9) ("The unredacted documents in question address[] internal and highly-specific issues relevant only to that industry and provide a roadmap and, in fact, a turnkey key product for competitors to seize on.")

"The demonstration of a valid need to protect the confidentiality of proprietary business information . . . may be a legitimate basis to rebut the public's presumption of access to judicial documents." Telegram, 2020 WL 3264264, at *3 (citing United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995)). "Sealing is also warranted if the business information would likely qualify as a trade secret." W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A., 21-CV-11003-LTS, 2022 WL 890184, at *2 (S.D.N.Y. Mar. 25, 2022) (citation omitted). "Although a business's information need not be a 'true' trade secret in order to warrant [sealing] . . . trade secret law is instructive in gauging whether information constitutes sensitive business information that courts should shield from public scrutiny." In re Parmalat Sec. Litig., 258 F.R.D. 236, 244 (S.D.N.Y. June 1, 2009) (citing SEC v. TheStreet.com, 273 F.3d 222, 231 n. 10 (2d Cir. 2001)).

Courts "have routinely applied the six factors set forth in the Restatement (First) of Torts § 757, comment b, when determining the existence of a trade secret." Id. at 244-45. Those factors are:

> (1) The extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could properly acquired or duplicated by others.

Ibid. (collecting cases).

AMSI proffers that the documents under consideration contain AMSI's "original source code for its LTLS Software, including its Database Dictionary and database structure", a number of software "subsystem[s]", and "all other portions of AMSI's LTLS Software, along with its user interface." (Motion at 2.) Regarding the first factor, AMSI proffers that "AMSI's

trade secrets are not known in the public domain or outside of AMSI's business, other than to licensees who acknowledge AMSI's trade secrets and contractually agree to maintain their confidentiality . . . ." (Motion at 3.) Regarding the third factor, AMSI states that it has "undertaken significant effort, time, expense, and other resources to develop and maintain the confidentiality of its trade secrets" (Motion at 3), that all employees "sign employment agreements that include confidentiality provisions" (id. at 4), and that all licensees of AMSI's Software are required "to execute license agreements acknowledging that AMSI's LTLS Software is a trade secret to AMSI and containing confidentiality provisions precluding the disclosure of AMSI's LTLS Software to third persons[.]" (Id.) Regarding the fourth factor, AMSI states that the information contained within the documents under consideration would, if released, "provide a roadmap and, in fact, turnkey . . . product for competitors to seize on." (Motion at 8) Regarding the fifth factor, AMSI proffers that it has spent "millions of dollars in capital and human resources" to develop these "trade secrets." (Motion at 3.) The Court also notes that AMSI's software is registered with the U.S. Copyright Office under registration number TX 7-232-319. (Docket entry no. 170 ¶ 6, Exhibit A.)

       The Court finds that AMSI has met its burden of demonstrating higher values sufficient to overcome the presumption of access and justify maintaining the current levels of sealing as to Rakamaric Declaration, the Traina Declaration, and the AMSI Summary Judgment Opposition. AMSI has shown that the information for which it seeks continued sealing is not publicly known, was developed at significant expense, and has been kept secret at considerable effort. AMSI has also shown that disclosure of this information would subject it to a significant competitive disadvantage. The Court concludes that the scope of the proposed redactions is

reasonable and narrowly tailored to cover only the sensitive information that could lead to competitive disadvantage if disclosed.

However, the Court's Order applies only to those docket entries for which AMSI made specific proffers. AMSI made no proffers in support of maintaining current levels of sealing for the documents filed at docket entry nos. 244, 254 (filed in redacted form at docket entry no. 257), and 256 (filed in redacted form at docket entry no. 255). Accordingly, AMSI is granted 21 days to file a motion for an order maintaining the current levels of sealing and redaction for these documents. The documents filed at these docket entries will be unsealed following the expiration of the 21-day period if no timely motion is filed.

## CONCLUSION

For the foregoing reasons, AMSI's motion to seal (docket entry no. 305) is granted. The Court respectfully directs the Clerk of Court to maintain the current sealed viewing level for the documents filed under docket entry nos. 216, 235, 238, 240, 244, 254, and 256. As to docket entry nos. 244, 254, and 256, the Clerk of Court is respectfully directed to unseal these documents following the expiration of the 21-day period if no timely motion is filed.

This Order resolves docket entry no. 305. Pretrial management of this case remains referred to Magistrate Judge Jennifer E. Willis.

SO ORDERED.

Dated: New York, New York
      May 9, 2022

                                    /s/ Laura Taylor Swain
                                    LAURA TAYLOR SWAIN
                                    Chief United States District Judge