**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AUTOMATED MANAGEMENT SYSTEMS, INC.,<br><br>    Plaintiffs,<br><br>  -against-<br><br>RAPPAPORT HERTZ CHERSON ROSENTHAL, P.C., WILLIAM RAPPAPORT, STEVEN M. HERTZ, ELIOT J. CHERSON, MICHAEL C. ROSENTHAL, BRANKO RAKAMARIC and BEN WACHTER,<br><br>    Defendants. | Civil Action No. 1:16-cv-04762(LTS)(KNF)<br><br>**DEFENDANT RHCR's RESPONSES TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS, AND COUNTER-STATEMENT OF MATERIAL FACTS** |

Pursuant to Fed. R. Civ. P. 56 and L. Civ. R. 56.1 of the Southern District of New York, Defendant Rappaport Hertz Cherson Rosenthal, P.C. ("RHCR") provides the following responses to the L. Civ. R. 56.1 Statement of Material Facts of Plaintiff Automated Management Systems, Inc. ("AMSI") and counter-statement of material facts as to which there is a genuine issue of fact for trial.

**A.      AMSI'S LTLS SOFTWARE**

1.      AMSI is a New York corporation that makes and licenses software products. (Declaration of James Traina, dated January 15, 2021 ("First Traina Dec."), at ¶15 [ECF No. 235]).

**RESPONSE: Admitted.**

2.      AMSI's Landlord Tenant Legal System ("LTLS") Software is landlord-tenant law firm practice management software. LTLS monitors all aspects of landlord-tenant legal practice — from the moment a tenant is late in satisfying a payment obligation all the way through final eviction. (First Traina Dec., ¶¶ 15-16).

**RESPONSE**: **Admitted.**

3.      The LTLS Software: (i): maintains tenancy information, automatically determines the nature of necessary legal action based on the nature of a tenancy and the legal status of a building (i.e., market rent, rent stabilized, rent controlled, loft/law, public housing, and the like); (ii) generates all pre-litigation forms (such as late notices, rent demands, and all forms of required statutory notices); and (iii) generates actual litigation forms (including pleadings custom tailored to the legal status of the leasehold and building). (First Traina Dec., ¶¶ 17-19).

**RESPONSE**: **Admitted.**

4.      The LTLS Software also automatically generates an invoice for each of the manual and automatic functions it performs, including the generation of pre-litigation forms (such as rent demands) and litigation forms (such as petitions, affidavits, warrants, and the like). (First Traina Dec., ¶¶ 19-20).

**RESPONSE**: **Admitted.**

5.      The LTLS Software has an Email Alerts Subsystem which automatically generates, formats, populates and transmits by email any dozens of AMSI-designed reports, important notices, alarms, and "selectable forms" to selected clients and law firms. (First Traina Dec., ¶¶ 22¬23).

**RESPONSE**: **Admitted.**

6.      The LTLS Software Email Alert subsystem: (i) automatically determines when a particular Email Alert is needed (i.e., when a "triggering event" has occurred). (First Traina Dec., ¶¶ 32-35); (ii) searches records for certain "Selection Criteria" relevant to that particular Email Alert (First Traina Dec., ¶¶ 40-79), and (iii) automatically generates the "Email Alert" by populating the required Email Alert template with information as to which rental unit(s) the notice,

reminder or update applies to, and transmits the Email Alert to the appropriate attorneys or personnel. (First Traina Dec., ¶¶ 36-39).

**RESPONSE: Admitted.**

7.    None of AMSI's competitors had an automatic Email Alerts system before RHCR Defendants copied AMSI's Email Alerts Subsystem to a secret server (sometimes referred to as the "Secret Server") named "RHCR-APPSRV" located on RHCR's computer network, replicated the functionality of AMSI's Email Alert Subsystem in the accused software (including AMSI's triggering programs and selection criteria), and (iii) slavishly duplicated AMSI's entire curated collection of Email Alerts. (First Traina Dec., ¶ 30; ¶¶ 13-14, 23, 26-122, 130-133, 135, 146-149, and 166-252).

**RESPONSE: Disputed. Declaration of Branko Rakamaric ("First Rakamaric Dec.") [ECF No. 220] at ¶¶ 14, 19-23, 29, 32, 39, 52-57.**

**B.    THE PARTIES' LICENSE AGREEMENT**

8.    Defendant RHCR is a New York law firm that specializes in landlord-tenant litigation. (First Traina Dec., ¶123).

**RESPONSE: Admitted.**

9.    For over 25 years, RHCR was a licensee of various AMSI software packages, including the LTLS Software. (First Traina Dec., ¶123).

**RESPONSE: Admitted.**

10.    The license agreement for the version of AMSI's LTLS Software at issue herein is entitled "Software Subscription Agreement" and was entered into on January 2, 2007 (the "License Agreement"). (First Traina Dec., ¶¶ 123-24 and Exhibit 19 thereto, a copy of the License Agreement).

**RESPONSE: Admitted.**

11.    The License Agreement contains several significant terms with respect to the parties' respective rights and obligations at issue in this case.

**RESPONSE:** **Objection, this SOMF should not, respectfully, be considered because (a) whether the License Agreement contains "significant terms with respect to the parties' rights and obligations at issue in this case" is a conclusion of law and not a statement of fact in accordance with L. Civ. R. 56.1(a), (b) the phrase "the parties' rights and obligations at issue in this case" is vague and ambiguous, and (c) there is no citation offered in support of this SOMF in violation of Fed. R. Civ. P. 56(c) and L. Civ. R. 56.1(d). To the extent this SOMF is considered, admitted that the terms of the License Agreement speak for themselves. First Traina Dec., Ex. 19.**

12.    Namely, the license granted to RHCR is limited to "use" of AMSI's LTLS Software (Section 3.a).[1] (First Traina Dec., ¶127 and Exhibit 19 thereto).

**RESPONSE:** **Admitted, however clearly RHCR is granted exclusively dominion and control over client data inputted by it and generated by the software.**

**COUNTERSTATEMENT**: **AMSI granted to RHCR "a non-exclusive, non-transferable and limited license to use the software, strictly in accordance with the software operating methodologies described within the software and in accordance with the [Licensing] [A]greement[.]" First Traina Dec., Ex. 19 at Wherefore Clause, ¶ 4.**

13.    The "terms and conditions" of the limited license granted in the License Agreement includes numerous restrictions on use of the software including, *inter alia*: (i) prohibitions against

---

[1] Section 3.a provides that "During the Term of Agreement, subject to continuing payment of monthly fees as set forth herein and to User compliance with Terms of Use and the Software License, Subscriber [i.e., RHCR] will have a license that entitles End use of the Software within End User's [i.e., RHCR] environment as defined herein. If Subscriber allows another entity or individual to Use the Software, Subscriber will be liable for compliance with this Agreement, and for any violations by that user of the Terms of Use or Software License."

copying, reproducing, creating any "derivative" work, modification, reverse engineering, disassembling and decompiling (Section 3.d)[2]; (ii) a prohibition against assignment (Section 2.e); [3] (iii) a limitation on copying to one backup copy; (iv) a disaster recovery location copy (DRL) and a copy on the web access server (Section 2.h)[4]; and (v) a restriction on re-installation of the software on a different server or environment (as defined in Section 1.f) (Section 2.h). (See, Exhibit 19 to the First Traina Dec.).

**RESPONSE**: **Admitted in part. Disputed in part. First Traina Dec., Ex. 19 at §§ 2.e, 2.h, and 3.d. Admitted that AMSI has accurately quoted §§ 2.e, 2.h, and 3.d of the License Agreement in footnotes 2, 3, and 4. Disputed, however, that AMSI's paraphrasing of §§ 2.e, 2.h, and 3.d of the License Agreement is an accurate reflection of the terms contained within those sections of the License Agreement. First Traina Dec., Ex. 19 at §§ 2.e, 2.h, and 3.d. Disputed that the prohibition against assignment of the License Agreement in Section 2.e of the License Agreement is interpreted as a "restriction on use of the software[.]" *Id.* at § 2.e.**

---

[2] Section 3.d provides that "Customer [i.e., RHCR] may not modify, reverse engineer, disassemble, decompile or otherwise attempt to access or determine the source code of the Software, copy, reproduce or distribute the Software in any way in whole or in part or create any derivative work based on the Software. Any use of these materials in any other work environment or networked computer environment, including remote usage of the system, for any purpose is prohibited. The Software is copyrighted and any unauthorized use of it is prohibited. If Customer breaches any of these terms, the License to Use the Software automatically terminates and Customer must immediately destroy any installed or printed materials."

[3] Section 2.e provides that "Subscriber may not assign or transfer this Agreement. Any such attempted assignment or transfer will be null and void. AMSI may terminate this Agreement in the event of any such attempted assignment or transfer."

[4] Section 2.h provides that "Customer may only make a back-up copy of the software, if AMSI did not make available such copy, *a disaster recovery location copy (DRL) and a copy on the web access server* and with the specific understanding that End User [i.e., RHCR] is not permitted to maintain multiple copies of the software for redundant system protection without the written consent of AMSI. AMSI retains any and all rights in copies made for back-up purposes. Re-Installation may only be effected by AMSI for no fee. No re-installation may be effected by either End User or any Third Party Vendor. End User is not permitted to re-install the software on a different server or computer or within a different environment without the written consent of AMSI. Re-Installation shall be performed by AMSI at no charge. Request for any authorizations hereunder shall be made in writing pursuant to the notice provisions of this agreement." (Emphasis in original).

#4747852V1

**COUNTERSTATEMENT**: AMSI omits that part of the prohibitions in Section 3.d of the Licensing Agreement pertain only to the source code of the Software. First Traina Dec., Ex. 19 at § 3.d. Section 3.d of the License Agreement provides, in pertinent part, that "Customer may not modify, reverse, engineer, disassemble, decompile or otherwise attempt to access or determine the *source code of the Software*, copy, reproduce or distribute the Software in any way in whole or in part or create any derivative work based on the Software." *Id.* (emphasis added). AMSI also omits that the prohibition on assignment is a prohibition on assignment of the License Agreement. Section 2.e of the License Agreement provides, in pertinent part, "Subscriber may not assign or transfer this Agreement. *Id.* at § 2.e. AMSI further omits that reinstallation of the software on a different server, computer, or different environment is permitted with the written consent of AMSI. *Id.* § 2.h. Section 2.h of the License Agreement provides, in pertinent part, "End User is not permitted to re-install the software on a different server or computer or within a different environment without the written consent of AMSI." *Id.* § 2.h.

14.      Section 3.d of the License Agreement provides that if RHCR breaches any of the foregoing terms, the license to use the LTLS Software automatically terminates, and RHCR must immediately destroy any installed or printed materials. (First Traina Dec., ¶128 and Exhibit 19 thereto).

**RESPONSE:** Objection, this SOMF should not, respectfully, be considered because it is vague and ambiguous as to the meaning of "the foregoing terms." To the extent that this SOMF is considered, disputed that a breach of any of the "foregoing terms" would trigger the termination and destruction provisions of Section 3.d of the License Agreement. First Traina Dec., Ex. 19 at § 3.d.

**COUNTERSTATEMENT**: **Section 3.d of the Licensing Agreement provides:**

**Customer may not modify, reverse engineer, disassemble, decompile or otherwise attempt to access or determine the source code of the Software, copy, reproduce or distribute the Software in any way in whole or in part or create any derivative work based on the Software. Any use of these materials in any other work environment or networked computer environment, including remote usage of the system, for any purpose is prohibited. The Software is copyrighted and any unauthorized use of it is prohibited. If Customer breaches any of these terms, the License to Use the Software automatically terminates and Customer must immediately destroy any installed or printed materials.**

**First Traina Dec., Ex. 19 at § 3.d.**

15.    The License Agreement contains various additional provisions calling for termination in the event of breach, including nonpayment (Section 2.c), or "for failure to comply with any terms of this Agreement, including Software License terms or Terms of Use" (Section 2.d)[5], by RHCR (Section 2.k). *(Id.)*[6]

**RESPONSE: Objection, this SOMF should not, respectfully, be considered because whether "[t]he License Agreement contains various additional provisions calling for termination in the event of breach[]" is a conclusion of law and not a statement of fact in accordance with L. Civ. R. 56.1(a). To the extent the remaining portions of this SOMF are considered, admitted that §§ 2.c. and 2.d. of the License Agreement provide for termination after 60 days' notice if any of AMSI's fees remain unpaid or in dispute for a period exceeding 90-days and if any party fails to comply with any of the terms of the License Agreement. Admitted that the License Agreement provides that either party may terminate the License**

---

[5] Section 2.d provides that "[e]ither party may terminate the subscription and Software License on 60 days prior notice for failure to comply with any terms of this Agreement, including Software License terms or Terms of Use. Immediately upon termination, Customer will no longer have any right to Use the Software and AMSI shall, as such, be permitted to de-install the Software from Customer's computer system by remote access or other means."

[6] Section 2.k provides that "Client or AMSI may terminate this agreement 90 Days from written notice of such termination. Upon termination, AMSI shall have the right to remove the Software from End User's environment."

#4747852V1

Agreement upon 90 days written notice pursuant to Section 2.k.  Disputed that §§ 2.c., 2.d., or 2.k. of the License Agreement contain the word "breach" or explicitly provide for what happens in the event of a "breach" of the License Agreement. First Traina Dec., Ex. 19 at §§ 2.c., 2.d., and 2.k.

> **COUNTERSTATEMENT**: Section 2.c of the License Agreement provides:
>
> **The end user will be charged pursuant to the fee schedule, negotiated and agreed to for good and valuable consideration, as annexed hereto in Schedule "A". If you accept this Agreement and undertake this subscription, you are authorizing AMSI to, issue invoices as applicable, in approximately 30-day intervals, for the amounts due pursuant to schedule "A" hereof based upon your monthly rental. If for any reason any of our charges for these fees remain unpaid or in dispute for a period exceeding 90 days, your subscription and license to Use the Software will automatically terminate *after 60 days* notice. It is your sole responsibility to ensure that payment is made and to notify AMSI (via the AMSI Help Desk) of any different billing instructions if you cancel or wish to change the notification method and/or address for our billing purposes.**

First Traina Dec., Ex. 19 at § 2.c (emphasis in original). Section 2.d of the License Agreement provides:

> **Either party may terminate the subscription and Software License on *60 days* prior notice for failure to comply with any terms of this Agreement, including Software License terms or Terms of Use. Immediately upon termination, Customer will no longer have any right to Use the Software and AMSI shall, as such, be permitted to de-install the Software from Customer's computer system by remote access or other means.**

*Id.* at § 2.d (emphasis in original). Section 2.k of the License Agreement provides, "Client or AMSI may terminate this agreement 90 days from written notice of such termination. Upon termination, AMSI shall have the right to remove the Software from End User's environment." *Id.* at § 2.k.

16.     The License Agreement further provides that RHCR cannot retain the licensed copy of AMSI's LTLS Software upon termination. (First Traina Dec., ¶129 and Exhibit 19 thereto).

8

**RESPONSE**: Objection, this SOMF should not, respectfully, be considered because (a) this SOMF contains conclusions of law and not statements of fact in accordance with L. Civ. R. 56.1(a); and (b) AMSI fails to provide a specific paragraph reference to Exhibit 19. To the extent this SOMF is considered, AMSI's interpretation of the License Agreement is disputed. First Traina Dec., Ex. 19 at §§ 2.d. and 2.k.

**COUNTERSTATEMENT**: Section 2.d of the License Agreement provides:

> Either party may terminate the subscription and Software License on *60 days* prior notice for failure to comply with any terms of this Agreement, including Software License terms or Terms of Use. Immediately upon termination, Customer will no longer have any right to Use the Software and AMSI shall, as such, be permitted to de-install the Software from Customer's computer system by remote access or other means.

Traina Dec., Ex. 19 at § 2.d (emphasis in original). Section 2.k of the License Agreement provides, "Client or AMSI may terminate this agreement 90 days from written notice of such termination. Upon termination, AMSI shall have the right to remove the Software from End User's environment." *Id.* at § 2.k.

17.    Section 2.d of the License Agreement explicitly provides that "[i]mmediately upon termination," RHCR "will no longer have any right to Use the Software and AMSI shall, as such, be permitted to de-install the Software from [RHCR's] computer system by remote access or other means." *(Id.)*

**RESPONSE**: Admitted.

**COUNTERSTATEMENT**: AMSI omits the immediately preceding sentence in Section 2.d of the License Agreement. In full, Section 2.d of the License Agreement provides:

> Either party may terminate the subscription and Software License on *60 days* prior notice for failure to comply with any terms of this Agreement, including Software License terms or Terms of Use. Immediately upon termination, Customer will no longer have any right to Use the Software and AMSI shall,

#4747852V1

**as such, be permitted to de-install the Software from Customer's computer system by remote access or other means.**

**Traina Dec., Ex. 19 at § 2.d.**

18.    The License Agreement further provides that "[a]ny use of AMSI's LTLS Software in any other work environment or networked computer environment, including remote usage of the system, for any purpose is prohibited" (Section 3.d). (See Exhibit 19 to the Traina Aff.)

**RESPONSE: Denied. Traina Dec., Ex. 19 at § 3.d.**

**COUNTERSTATEMENT: Section 3.d of the Licensing Agreement provides:**

**Customer may not modify, reverse engineer, disassemble, decompile or otherwise attempt to access or determine the source code of the Software, copy, reproduce or distribute the Software in any way in whole or in part or create any derivative work based on the Software. Any use of these materials in any other work environment or networked computer environment, including remote usage of the system, for any purpose is prohibited. The Software is copyrighted and any unauthorized use of it is prohibited. If Customer breaches any of these terms, the License to Use the Software automatically terminates and Customer must immediately destroy any installed or printed materials.**

**First Traina Dec., Ex. 19 at § 3.d.**

19.    AMSI's LTLS Software is copyrighted and any unauthorized use of it is prohibited (Section 3.d) (First Traina Dec., ¶152 & Exhibit 19 thereto).

**RESPONSE: Admitted that Section 3.d of the License Agreement states, "The Software is copyrighted and any unauthorized use of it is prohibited." First Traina Dec., Ex. 19 at § 3.d. Disputed, however, this quoted provision of Section 3.d of the License Agreement or Mr. Traina's paraphrasing of it in his declaration demonstrates that AMSI's LTLS Software is copyrighted.**

#4747852V1

20.     If "Customer breaches any of these terms, the License to Use the Software automatically terminates and Customer must immediately destroy any installed or printed materials." (Section 3.d) (First Traina Dec., ¶128 and Exhibit 19 thereto).

**RESPONSE: Admitted.**

**COUNTERSTATEMENT**: **AMSI omits several important sentences that precede and qualify this sentence that give the quoted sentence context and definition. Section 3.d of the Licensing Agreement provides:**

> **Customer may not modify, reverse engineer, disassemble, decompile or otherwise attempt to access or determine the source code of the Software, copy, reproduce or distribute the Software in any way in whole or in part or create any derivative work based on the Software. Any use of these materials in any other work environment or networked computer environment, including remote usage of the system, for any purpose is prohibited. The Software is copyrighted and any unauthorized use of it is prohibited. If Customer breaches any of these terms, the License to Use the Software automatically terminates and Customer must immediately destroy any installed or printed materials.**

**First Traina Dec., Ex. 19 at § 3.d.**

21.     The License Agreement imposes a specific duty on RHCR to maintain the confidentiality of materials disclosed by AMSI, including after the termination of such Agreement. Specifically, Section 3.f provides:

> Customer agrees that Software contains proprietary information including trade secrets, know-how and confidential information that is the exclusive property of AMSI. During the period this Agreement is in effect and at all times after its termination, Customer and its employees and agents shall maintain the confidentiality of this information and not sell, license, publish, display, distribute, disclose or otherwise make available this information to any third party nor use such proprietary information concerning the Software, including any Database files, Source Code, Dynamic Link Libraries ("DLL"s), Application Program Interfaces ("API"s), user manuals and screens, to persons not an employee of Customer without the prior written consent of AMSI.

(*See* First Traina Dec., Exhibit 19 thereto).

11

**RESPONSE**: Objection, the first sentence of this SOMF should not, respectfully, be considered because whether and to what extent the License Agreement imposes a duty on RHCR are conclusions of law and not statements of fact in accordance with L. Civ. R. 56.1(a). To the extent the first sentence of this SOMF is considered, disputed that Section 3.f of the License Agreement provides as much. First Traina Dec., Ex. 19 at § 3.f. Admitted that AMSI accurately quotes Section 3.f of the License Agreement in the second sentence.

22.    The purpose of Section 3.f is to protect AMSI from disclosure of its LTLS Software trade secret information, which is necessarily disclosed to implement the License Agreement, from unauthorized disclosure. (Second Traina Dec., ¶14).

**RESPONSE**: Disputed. First Traina Dec., Ex. 19 at § 3.f.

**COUNTERSTATEMENT**: The only purpose one can draw from Section 3.f of the License Agreement is from its contents. First Traina Dec., Ex. 19 at § 3.f. Section 3.f of the License Agreement provides:

> Customer agrees that Software contains proprietary information including trade secrets, know-how and confidential information that is the exclusive property of AMSI. During the period this Agreement is in effect and at all times after its termination, Customer and its employees and agents shall maintain the confidentiality of this information and not sell, license, publish, display, distribute, disclose or otherwise make available this information to any third party nor use such proprietary information concerning the Software, including any Database files, Source Code, Dynamic Link Libraries ("DLL"s), Application Program Interfaces ("API"s), user manuals and screens, to persons not an employee of Customer without the prior written consent of AMSI.

*Id.*

23.    The License Agreement gives AMSI full control over the exploitation of its confidential and proprietary information. (Second Traina Dec., ¶15).

**RESPONSE**: Objection, the first sentence of this SOMF should not, respectfully, be considered because (a) it contains conclusions of law and not statements of fact in accordance

#4747852V1

with L. Civ. R. 56.1(a); (b) it is vague as to the meaning of "full control" or "exploitation" in this context; and (c) it omits any citation to any provision in the License Agreement. To the extent this SOMF is considered, disputed. First Traina Dec., Ex. 19.

**C.    RHCR'S BREACHES OF THE LICENSE AGREEMENT**

24.    In or about October, 2015, RHCR retained AMSI's competitors, defendants Branko Rakamaric ("Rakamaric") and Ben Wachter ("Wachter"), to replicate the functionality of AMSI's LTLS Software by upgrading their vastly inferior accused software (the "Rakamaric Software").[7] (First Traina Dec., ¶¶ 13-14, 23, 26-122, 130-133, 135, 146-149, and 166-252).

**RESPONSE:** Admitted that on October 1, 2015, RHCR and Branko Rakamaric entered into a software subscription agreement. First Rakamaric Dec. at ¶ 10. Disputed that RHCR retained Benjamin Wachter. *Id.* at ¶ 16. Disputed that the Rakamaric Software is vastly inferior to the LTLS Software. *Id.* at ¶ 48. Disputed that RHCR retained Branko Rakamaric to replicate the functionality of AMSI's LTLS Software. First Declaration of Steven M. Hertz ("First Hertz Dec.") [ECF No. 218], ¶¶ 7-10; First Rakamaric Dec. at ¶ 19. Disputed that the Law Firm Defendants falsely represented that they retained Rakamaric to install the Rakamaric Software because they were having problems with the AMSI Software. Hertz Dec. ¶ 7.

**COUNTERSTATEMENT**: In 2015, RHCR was having persistent problems with the AMSI Software. First Hertz Dec. at ¶ 7. The AMSI Software would routinely crash and freeze, creating delays and difficulties processing RHCR's work. *Id.* In addition, AMSI's President, James Traina had threatened to cut off RHCR's computer system because he

---

[7] RHCH and its attorneys named as defendants (referred to as the "Law Firm Defendants") falsely represented that they retained Rakamaric and Wachter to install the Rakamaric Software because they were "having problems with the AMSI Software." As shown in the First Traina Dec., ¶223, fn. 23, RHCR's computer "problems" had nothing to do with AMSI's LTLS Software but were instead problems with RHCR's own network. (*Id.* at fn. 24).

objected to RHCR's representation of a business rival. *Id.* at ¶ 8. On October 1, 2015, RHCR and Branko Rakamaric entered into a software subscription agreement (the "Rakamaric License Agreement") to install a new software system for RHCR. *Id.* at ¶ 9; First Rakamaric Dec., ¶ 10; *id.* at Ex. B. In 2015, Mr. Rakamaric retained Benjamin Wachter, an experienced programmer, to assist Mr. Rakamaric in performing his obligations under the Rakamaric License Agreement. First Rakamaric Dec. at ¶ 16. The Rakamaric Software was superior to the AMSI Software. *Id.* at ¶ 48.

25.     Before October 2015, the Rakamaric Software was a rudimentary docketing program capable of use for routine docketing functions in low-volume landlord-tenant proceedings but lacking any of the advanced features of AMSI's LTLS Software. (First Traina Dec., ¶13). Among other things, the Rakamaric Software: (i) had no ability to send automatic Email Alerts; (ii) had no capability to commence holdover proceedings; (iii) lacked advanced invoicing functions, and (iv) did not store all the detailed information which is stored by AMSI's LTLS Software for each landlord-tenant legal proceeding. (First Traina Dec. ¶32, fn. 10).

**RESPONSE: Admitted in part. Disputed in part. First Rakamaric Dec. at ¶ 12. Admitted only that before October 2015, the Rakamaric Software did not have an advanced invoicing function and lacked an advanced automated email function. First Rakamaric Dec. at ¶¶ 5, 15. The remaining portions of this SOMF are disputed. *Id.* at ¶ 12; First Hertz Dec. at ¶ 13.**

26.     The Rakamaric Software required a great deal of manual intervention, was susceptible to human error, did not reduce the clerical burden on law firm staff, and was completely unsuitable and unusable for RHCR's needs.[8] *Id.*

---

[8] Thus, as RHCR and the other Defendants admit, the process of "upgrading" the Rakamaric Software took at least from October, 2015 through June, 2016. In fact, it took far longer, because various features which were important to

#4747852V1

**RESPONSE**: Disputed. First Rakamaric Dec. at ¶¶ 14, 19-23, 29, 32, 39, 48, 52-57.

27.    In 2015 and 2016, RHCR had extensive communications with Rakamaric and Wachter expressing their desire to replicate the functionality of AMSI's LTLS Software. (First Traina Dec., ¶¶ 130-131).

**RESPONSE**: Admitted in part, disputed in part. Admitted that between 2015 and 2016, RHCR requested modifications to the Rakamaric Software to fit RHCR's needs. Disputed that RHCR expressed a desire to Rakamaric or Wachter to replicate the functionality of AMSI's LTLS Software. O'Connor Dec., Ex. A (June 16, 2016 Reply Affidavit of William J. Rappaport), ¶¶ 7-8, 10, 15-16; Second Rakamaric Dec. at ¶¶ 21, 24.

28.    RHCR sent many emails to Rakamaric and Wachter explaining the operational details of AMSI's LTLS Software (including its Email Alerts subsystem and Holdover Subsystem), and providing Rakamaric and Wachter with copies of the AMSI-designed Email Alerts, as well as AMSI's Holdover petition (and various other forms created and printed by AMSI's LTLS Software). (First Traina Dec., Exhibits 20 and 21).

**RESPONSE**: Disputed. First Traina Dec., Ex. 20 and 21. O'Connor Dec., Ex. A (June 16, 2016 Reply Affidavit of William J. Rappaport), ¶¶ 7-8, 10, 15-16; Second Rakamaric Dec. at ¶¶ 21, 24.

**COUNTERSTATEMENT**: RHCR did not send e-mails to Mr. Rakamaric and Mr. Wachter requesting replication of the functionality of AMSI's LTLS Software. O'Connor Dec., Ex. A (June 16, 2016 Reply Affidavit of William J. Rappaport), ¶¶ 7-8, 10, 15-16; Second Rakamaric Dec. at ¶¶ 21, 24. The documents enclosed as Exhibits 20 and 21 to the

---

RHCR were still absent from the Rakamaric Software in June 2016. (Second Traina Dec., ¶16). Contrary to Defendants' representations throughout this lawsuit, the Rakamaric Software was not merely "upgraded." *(Id.)*. Rather, it was substantially changed to replicate the features and functionality of AMSI's LTLS Software. *(Id.)*

#4747852V1

First Traina Declaration do not explain the operational details of AMSI's LTLS Software and do not constitute requests by RHCR to replicate any portion of the LTLS Software. First Traina Dec., Ex. 20 and 21.

29.    RHCR provided Rakamaric and Wachter with the ability to access and copy from RHCR-NYAPP, the server on RHCR's computer network in which AMSI's LTLS Software was stored. (First Traina Dec., ¶¶ 121, 237).[9]

**RESPONSE**: **Disputed. O'Connor Dec., Ex. A (June 16, 2016 Reply Affidavit of William J. Rappaport), ¶ 8.**

**COUNTERSTATEMENT**: **RHCR provided Mr. Rakamaric and, by extension, his assistant, Mr. Wachter with access to RHCR's various servers so that he could access the current landlord-tenant data only. O'Connor Dec., Ex. A (June 16, 2016 Reply Affidavit of William J. Rappaport), ¶ 8.**

30.    During that time (and thereafter), Rakamaric and Wachter extensively studied the structure, function, operation and user interface of AMSI's LTLS Software. (First Traina Dec., ¶13).

**RESPONSE**: **Disputed. Second Rakamaric Dec. at ¶¶ 20-22.**

31.    Rakamaric and Wachter copied AMSI's entire database (including its Data Dictionary and all data) and thousands of other files from AMSI's LTLS Software (including

---

[9] RHCR cannot genuinely deny that they gave Rakamaric and Wachter the unfettered ability to access and copy AMSI's LTLS Software. RHCR admits that it retained Rakamaric and Wachter to migrate the data from AMSI's LTLS Software to the Rakamaric Software. To do that, Rakamaric and Wachter required the ability to access and copy AMSI's LTLS Software. Furthermore, one of the thousands of files of AMSI's LTLS Software that was copied by Rakamaric and Wachter was the password file containing the User IDs and passwords of all RHCH attorneys (and certain personnel) for accessing AMSI's LTLS Software. (First Traina Dec., ¶251, Exhibit 36).

#4747852V1

system files, password files, and entire fully functional subsystems) to the Secret Server named "RHCR-APPSRV" located on the RHCR's computer network.[10] *(Id)*.

**RESPONSE: Disputed. First Rakamaric Dec. at ¶¶ 14, 19-23, 29, 32, 39, 52-57. Second Rakamaric Dec. at ¶¶ 24, 26, 29-30.**

32.     Rakamaric and Wachter used AMSI's LTLS Software as an implementation guide to "upgrade" Defendants' vastly inferior Rakamaric Software by replicating the functionality of AMSI's LTLS Software. (First Traina Dec., ¶¶ 3, 12, 14, 23, 26-122, 130-133, 135, 146-149, and 166-252).

**RESPONSE: Disputed. First Rakamaric Dec. at ¶¶ 14, 19-23, 29, 32, 39, 48, 52-57; Second Rakamaric Dec. at ¶¶ 24, 26, 29-30.**

33.     In this manner, Defendants replicated many functions of AMSI's LTLS Software that were then missing from the Rakamaric Software in an effort to target and steal customers from AMSI. (First Traina Dec., ¶2, fn. 2).

**RESPONSE: Disputed. First Rakamaric Dec. at ¶¶ 14, 19-23, 29, 32, 39, 52-57; Second Rakamaric Dec. at ¶¶ 24, 26, 29-30.**

34.     Defendants "upgraded" their vastly inferior software using AMSI's Data Dictionary as a roadmap. (First Traina Dec., ¶¶ 83-100). AMSI's Data Dictionary is embodied in its copyrighted software and is a valuable trade secret of AMSI. (First Traina Dec., ¶13).

**RESPONSE: Objection, the second sentence of this SOMF should not, respectfully, be considered because Paragraph 13 of the First Traina Declaration does not support this**

---

[10] The subsystems copied included AMSI' s Email Alert Subsystem, AMSI' s Holdover Subsystem, AMSI's Expired Rent Demands Subsystem, AMSI's Expired Petitions Subsystem, and AMSI's Trial Letter Subsystem.

proposition. **To the extent this SOMF is considered, disputed. First Rakamaric Dec. at ¶¶ 14, 19-23, 29, 32, 39, 48, 52-57; Second Rakamaric Dec. at ¶¶ 24, 26, 29-30.**

35.    The Data Dictionary describes the purpose and function of each of 51 different tables and each of the 2213 variables contained in those tables. (First Traina Dec., ¶¶ 80-83).

**RESPONSE: Immaterial.**

36.    AMSI's Data Dictionary provided Defendants with a roadmap to the design and structure of AMSI's LTLS Software and the key to all the functions and capabilities thereof — and the many different variables which are used to perform those functions. (First Traina Dec., ¶¶ 83¬100; 101-114).

**RESPONSE: Disputed. Second Rakamaric Dec. ¶¶ 30, 32.**

37.    In June 2016, AMSI's president, James Traina, found illicit copies of AMSI's entire database (including AMSI's Data Dictionary), and over 4,000 files of AMSI's LTLS Software (including system files and numerous fully functional subsystems) on the Secret Server (RHCR-APPSRV) located on RHCR's computer network. (First Traina Dec., ¶¶ 223-245).

**RESPONSE: Objection, this SOMF should not, respectfully, be considered because the term "illicit" imports a conclusion of law and not a statement of fact in accordance with L. Civ. R. 56.1(a). To the extent this statement is considered, disputed. Second Rakamaric Dec. at ¶¶ 17-24.**

38.    Namely, AMSI found copies of its entire database on the Secret Server (including its Data Dictionary and all data). (*Id.; see also* First Traina Dec., ¶¶ 13-14, 23, 26-122, 130-133, 135, 146-149, and 166-252).

**RESPONSE: Disputed. Second Rakamaric Dec. at ¶¶ 17-24, 26, 29-30. First Rakamaric Dec. at ¶ 57(b)(i)**

39. AMSI also found copies of numerous fully functional subsystems of its LTLS Software on the Secret Server (including AMSI's Email Alert Subsystem, Expired Rent Demands and Petitions Website and Alerts Subsystem, Trial Letter Alerts Subsystem, Warrants Optional Subsystem and Holdover Subsystem). *(Id.)*

**RESPONSE: Disputed. Second Rakamaric Dec. at ¶¶ 17-24, 26, 29-30; Second Rakamaric Dec. at ¶¶ 24, 26, 29-30.**

40. Rakamaric and Wachter "upgraded" the vastly inferior Rakamaric Software to replicate the functionality of AMSI's LTLS Software. *(Id.)*.

**RESPONSE: Disputed. First Rakamaric Dec. at ¶¶ 14, 19- 23, 29, 32, 39, 48, 52-57; Second Rakamaric Dec. at ¶¶ 24, 26, 29-30.**

41. The similarities between AMSI's LTLS Software and the Rakamaric Software are so extensive that the transition from AMSI's LTLS Software to the Rakamaric Software was totally unnoticeable to end-users of the LTLS Software. (Second Traina Dec., ¶6). A main drawback of the replacement of software is the need for users to learn an entirely new system. *(Id.)*. RHCR avoided the need for any re-training by slavishly replicating the Email Alerts output of AMSI's LTLS Software so that the Rakamaric Software had the same look and feel as the outputs generated by AMSI's LTLS Software. *(Id.)*.

**RESPONSE: Disputed that "[a] main drawback of the replacement of software is the need for users to learn an entirely new system" is a material fact. Disputed that RHCR developed any portion of the Rakamaric Software. First Rakamaric Dec. at ¶ 6; Second Rakamaric Dec. at ¶ 13. The first and third sentences of this SOMF are disputed. First Rakamaric Dec. at ¶¶ 14, 19-23, 29, 32, 39, 48, 52-57; Second Rakamaric Dec. at ¶¶ 24, 26, 29-30.**

**COUNTERSTATEMENT**: **The Rakamaric Software is fundamentally different than ASMI's LTLS Software. First Rakamaric Dec. at ¶¶ 14, 19- 23, 29, 32, 39, 48, 52-57. The automated email functions, including the Email Alerts output, of the Rakamaric Software similarly differ significantly from AMSI's LTLS Software with respect to design, code, and appearance. *Id.* at ¶ 53(a)-(c). The look and feel of the automated email functions, including the Email Alerts output, of the Rakamaric Software and AMSI's LTLS Software are completely different. *Id.* Mr. Rakamaric did not copy or replicate any portion of AMSI's LTLS Software. *Id.* at ¶¶ 14, 19- 23, 29, 32, 39, 48, 52-57; Second Rakamaric Dec. at ¶¶ 24, 26, 29-30.**

42.     The extensive similarities touch upon numerous aspects of the software programs, including but not limited to: (i) duplication of AMSI's entire collection of Email Alerts; (ii) replication of the programs used by AMSI to generate its Email Alerts;[11] (iii) copying of AMSI's database structure as disclosed by AMSI's Data Dictionary; (iv) copying of database tables, table names, and data elements, and (v) replication of various features and functions. (First Traina Dec. ¶¶ 13-14, 23, 26-122, 130-133, 135, 146-149, and 166-252).

**RESPONSE: Disputed. First Rakamaric Dec. at ¶¶ 14, 19-23, 29, 32, 39, 48, 52-57; Second Rakamaric Dec. at ¶¶ 24, 26, 29-30.**

43.     Rakamaric and Wachter copied AMSI's Data Dictionary to the Secret Server, analyzed the Data Dictionary for the purpose of enabling them to extract the law firm data — along with AMSI's trade secrets, including proprietary know-how and design functions, in order to develop and enhance the functionality of the Rakamaric Software. (First Traina Dec., ¶100).

---

[11] "In its summary judgment motion, RHCR referred to the Email Alert Subsystem of the AMSI LTLS Software as providing "routine messaging" functions. However, contrary to RHCR's assertion, there is nothing "routine" about the automatic email alerts produced by AMSI's LTLS Software. Before AMSI LTLS Software, no landlord-tenant practice management software package had automatic email alerts capability. (First Traina Dec., ¶30).

#4747852V1

**RESPONSE**: Objection, Paragraph 100 of the First Traina Declaration, the only citation for this SOMF, does not support the propositions advanced in this SOMF. In any event, admitted in part, disputed in part. Admitted that Rakamaric copied an existing data folder in the RHCR-NYAPP Server that contained RHCR's client data onto the new RHCR-APPSRV Server and, in doing so, unintentionally brought over into the RHCR-APPSRV Server 20 AMSI access server script files ("asp scripts") concerning AMSI's email forwarding function. Second Rakamaric Dec. at ¶¶ 20-21. Disputed further that Rakamaric or Wachter used any piece of AMSI's LTLS Software for the purpose of utilizing, recreating, or replicating it for the Rakamaric Software. *Id.* at ¶¶ 22-25; First Rakamaric Dec. at ¶¶ 14, 19- 23, 29, 32, 39, 48, 52-57; Second Rakamaric Dec. at ¶¶ 24, 26, 29-30.

**COUNTERSTATEMENT**: Rakamaric unintentionally copied an existing data folder in the RHCR-NYAPP Server that contained RHCR's client data onto the new RHCR-APPSRV Server and, in doing so, unintentionally brought over into the RHCR-APPSRV Server twenty (20) AMSI .asp scripts concerning AMSI's email forwarding function. Second Rakamaric Dec. at ¶¶ 20-21. Rakamaric never had any intention to utilize these .asp scripts into the Rakamaric Software. *Id.* at ¶ 21. Mr. Rakamaric never opened any of the .asp scripts because they do not contain data and were not part of the data conversion. *Id.* In any event, the scripts are of no use to and are not part of the Rakamaric Software. *Id.* at ¶ 22. The Rakamaric Software is fundamentally different than ASMI's LTLS Software. First Rakamaric Dec. at ¶¶ 14, 19- 23, 29, 32, 39, 48, 52-57. Additionally, RHCR has not used these twenty .asp scripts and has no intention of using them. O'Connor Dec., Ex. A (June 16, 2016 Reply Affidavit of William J. Rappaport), ¶ 11. The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 57, as if it were fully set forth herein.

#4747852V1

44.    Studying the Data Dictionary provided Rakamaric and Wachter with a roadmap to all the advanced features contained in AMSI's LTLS Software and identified much of the information needed to implement those features. Rakamaric and Wachter then added features of AMSI's LTLS Software one-by-one until it had replicated AMSI's LTLS Software. *(Id.)*

**RESPONSE: Objection, Paragraph 100 of the First Traina Declaration, the only citation for this SOMF, does not support the propositions, that (a) Rakamaric or Wachter ever studied the Data Dictionary, or (b) Rakamaric and Wachter added features of AMSI's LTLS Software until it replicated AMSI's LTLS Software. In any event, disputed that Rakamaric or Wachter ever studied the Data Dictionary or the twenty (20) .asp scripts when developing the Rakamaric Software. Second Rakamaric Dec. at ¶¶ 20-21. Disputed that Rakmaric or Wachter added or replicated features of AMSI's LTLS Software to the Rakamaric Software. First Rakamaric Dec. at ¶¶ 14, 19-23, 29, 32, 39, 48, 52-57; Second Rakamaric Dec. at ¶¶ 24, 26, 29-30.**

**COUNTERSTATEMENT: The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 43, as if it were fully set forth herein.**

45.    Rakamaric and Wachter relied on AMSI's LTLS Software as an implementation guide to such a great degree that they ultimately performed "parallel testing" to ensure that the Rakamaric Software performed precisely in the same manner as AMSI's LTLS Software. (First Traina Dec., ¶165).

**RESPONSE: Objection that Paragraph 165 of the Traina Declaration, the only citation for this SOMF, is not based on Mr. Traina's personal knowledge in violation of Fed. R. Civ. P. 56(c)(4), which governs declarations for use in support of motions for summary judgment. In any event, disputed that Rakamaric and Wachter relied on AMSI's LTLS**

Software as a guide to develop the Rakamaric Software. Second Rakamaric Dec. at ¶¶ 20-21. Disputed further that the Rakamaric Software performed in the same manner as AMSI's LTLs Software. First Rakamaric Dec. at ¶¶ 14, 19-23, 29, 32, 39, 48, 52-57; Second Rakamaric Dec. at ¶ 22.

46.     Upon discovering RHCR's breaches of the License Agreement, on June 9, 2016, AMSI terminated the License Agreement and disabled its LTLS Software. (Second Traina Dec.,¶ 17).

**RESPONSE:** Objection, this SOMF should not, respectfully, be considered because the allegation that RHCR "breache[d]" the License Agreement is (a) a conclusion of law and not a statement of fact in violation of L. Civ. R. 56.1(a) and, moreover, (b) not a fact made on personal knowledge or premised on admissible evidence on which Mr. Traina is competent to testify in violation of Fed. R. Civ. P. 56(c)(4). To the extent the remaining portions of this SOMF are considered, admitted that on June 9, 2016, AMSI notified RHCR that it intended to terminate the License Agreement and, on that same day, without prior notice de-installed its LTLS Software. Rappaport Dec. at ¶ 3; Rosenthal Dec. at ¶ 3; Second Hertz Dec. at ¶ 3; Second Rakamaric Dec. at ¶ 28.

47.     No provision of the License Agreement permitted the disclosure of the LTLS Software by RHCR to Rakamaric and Wachter. Nevertheless, RHCR disclosed AMSI's confidential information to Rakamaric and Wachter without AMSI's prior written consent so that Rakamaric and Wachter could create an unlawful competing product. (First Traina Dec., ¶¶ 13¬14, 23, 26-122, 130-133, 135, 146-149, and 166-252).

**RESPONSE:** Objection, this SOMF should not, respectfully, be considered because the allegations (a) whether any "provision of the License Agreement permitted the disclosure

of the LTLS Software by RHCR to Rakamaric and Wachter[,]" (b) whether Rakamaric and Wachter created an "unlawful competing product[,]" and (c) whether "RHCR disclosed AMSI's confidential information" are all conclusions of law and not statements of fact in violation of L. Civ. R. 56.1(a). In any event, disputed that: (a) there is "[n]o provision of the License Agreement permitted the disclosure of the LTLS Software by RHCR to Rakamaric and Wachter[,]" First Traina Dec., Ex. 19; (b) "RHCR disclosed AMSI's confidential information to Rakamaric and Wachter without AMSI's prior written consent so that Rakamaric and Wachter could create an unlawful competing product[,]" First Rakamaric Dec. at ¶¶ 14, 19-23, 29, 32, 39, 48, 52-57; Second Rakamaric Dec. at ¶¶ 22-25.

48.     RHCR retained Rakamaric and Wachter, AMSI's competitors, to upgrade their competing software to create a "derivative work" replicating the functionality of AMSI's LTLS Software in violation of Section 3.d of the License Agreement. In order to do so, RHCR made unauthorized copies of AMSI's LTLS Software in violation of Section 3.d of the License Agreement. (First Traina Dec., ¶130).

**RESPONSE:** Objection, this SOMF should not, respectfully, be considered because the allegations whether RHCR's actions violated Section 3.d of the License Agreement are conclusions of law and not statements of fact in violation of L. Civ. R. 56.1(a). In any event, disputed that RHCR retained Benjamin Wachter. First Rakamaric Dec. at ¶ 16; First Hertz Dec. at ¶ 12. Disputed that RHCR retained Rakamaric to upgrade competing software to create a "derivative work" replicating the functionality of AMSI's LTLS Software. First Hertz Dec. at ¶¶ 7-10; First Rakamaric Dec. at ¶ 19. Disputed that RHCR made unauthorized copies of AMSI's LTLS Software. First Rakamaric Dec. at ¶¶ 14, 19-23, 29, 32, 39, 48, 52-57; Second Rakamaric Dec. at ¶¶ 24-30.

#4747852V1

**COUNTERSTATEMENT**: **In 2015, RHCR was having persistent problems with the AMSI Software. First Hertz Dec. at ¶ 7. The AMSI Software would routinely crash and freeze, creating delays and difficulties processing RHCR's work.** *Id.* **In addition, AMSI's President, James Traina had threatened to cut off RHCR's computer system because he objected to RHCR's representation of a business rival.** *Id.* **at ¶ 8. On October 1, 2015, RHCR and Branko Rakamaric entered into a software subscription agreement (the "Rakamaric License Agreement") to install a new software system for RHCR.** *Id.* **at ¶ 9; Rakamaric Dec., ¶ 10;** *id.* **at Ex. B. In 2015, Mr. Rakamaric retained Benjamin Wachter, an experienced programmer, to assist Mr. Rakamaric in performing his obligations under the Rakamaric License Agreement. Rakamaric Dec. at ¶ 16. The Rakamaric Software was superior to the AMSI Software.** *Id.* **at ¶ 48. In any event, the Rakamaric Software is fundamentally different than ASMI's LTLS Software. First Rakamaric Dec. at ¶¶ 14, 19- 23, 29, 32, 39, 48, 52-57.**

49.    In or about October, 2015, RHCR retained Rakamaric and Wachter to upgrade their Rakamaric Software to replicate the functionality of AMSI's LTLS Software. Since October 15, 2015, Rakamaric and Wachter were given unfettered access by RHCR to AMSI's LTLS Software located on RHCR's computer network, including: (i) all compiled source code; (ii) all un-compiled source code: and (iii) AMSI's entire database (including AMSI's Data Dictionary and all data), documentation, and system files. *(Id).*

**RESPONSE: Disputed that RHCR retained Benjamin Wachter. First Rakamaric Dec. at ¶ 16; First Hertz Dec. at ¶ 12. Disputed that RHCR retained Rakamaric to upgrade the Ramaric Software to replicate the functionality of AMSI's LTLS Software. First Hertz Dec. at ¶¶ 7-10; First Rakamaric Dec. at ¶ 19. Disputed that Rakamaric or Wachter, in fact, replicated the functionality of AMSI's LTLS Software. First Rakamaric Dec. at ¶¶ 14, 19-**

**23, 29, 32, 39, 48, 52-57; Second Rakamaric Dec. at ¶ 24. Disputed that Rakamaric and Wachter were given unfettered access by RHCR to AMSI's LTLS Software. O'Connor Dec., Ex. A (June 16, 2016 Reply Affidavit of William J. Rappaport), ¶ 8; Second Rakamaric Dec. at ¶ 24.**

      **COUNTERSTATEMENT**: **In 2015, RHCR was having persistent problems with the AMSI Software. First Hertz Dec. at ¶ 7. The AMSI Software would routinely crash and freeze, creating delays and difficulties processing RHCR's work.** *Id.* **In addition, AMSI's President, James Traina had threatened to cut off RHCR's computer system because he objected to RHCR's representation of a business rival.** *Id.* **at ¶ 8. On October 1, 2015, RHCR and Branko Rakamaric entered into a software subscription agreement (the "Rakamaric License Agreement") to install a new software system for RHCR.** *Id.* **at ¶ 9; Rakamaric Dec., ¶ 10;** *id.* **at Ex. B. In 2015, Mr. Rakamaric retained Benjamin Wachter, an experienced programmer, to assist Mr. Rakamaric in performing his obligations under the Rakamaric License Agreement. Rakamaric Dec. at ¶ 16. The Rakamaric Software was superior to the AMSI Software.** *Id.* **at ¶ 48. The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 43, as if it were fully set forth herein.**

      **COUNTERSTATEMENT**: **The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 43, as if it were fully set forth herein.**

      50.    Since October 2015, Rakamaric and Wachter have had the ability to run, examine, dissect, copy and replicate AMSI's entire LTLS Software and review its documentation. (First Traina Dec., ¶130).

      **RESPONSE: Disputed. O'Connor Dec., Ex. A (June 16, 2016 Reply Affidavit of William J. Rappaport), ¶ 8; First Hertz Dec. at ¶¶ 7-10; First Rakamaric Dec. at ¶ 19.**

#4747852V1

**COUNTERSTATEMENT**: **The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 43, as if it were fully set forth herein.**

51.    Over at least a two-year period from 2015 to 2016, RHCR communicated on numerous occasions its requests to Rakamaric and Wachter for them to replicate the features of AMSI's LTLS Software. These requests are contained in many emails between RHCR and Rakamaric and Wachter. (First Traina Dec., ¶130-31, and Exhibit 20 thereto).

**RESPONSE: Disputed. Second Rakamaric Dec. at ¶ 24.**

**COUNTERSTATEMENT**: **The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 28, as if it were fully set forth herein.**

52.    In order to do so, RHCR set up a development server named "RHCR-APPSRV" (i.e., the Secret Server) on their computer network which Rakamaric and Wachter used to create a development environment into which they copied over 4,000 files from AMSI's LTLS Software for the purpose of using the copied files to upgrade their Rakamaric Software to replicate the functionality of AMSI's LTLS Software. (First Traina Dec., ¶130).

**RESPONSE: Admitted in part. Disputed in part. Admitted that RHCR set up a server named RHCR-APPSRV on their computer network for Rakamaric to develop and install the Rakamaric Software. First Rakamaric Dec. at ¶ 34. Admitted that Rakamaric copied an existing data folder in the RHCR-NYAPP Server that contained RHCR's client data onto the new RHCR-APPSRV Server and, in doing so, unintentionally brought over into the RHCR-APPSRV Server twenty (20) AMSI .asp scripts concerning AMSI's email forwarding function. Second Rakamaric Dec. at ¶¶ 20-21. Disputed, however, that Rakamaric or Wachter copied 4,000 files from AMSI's LTLS Software.** *Id.* **Disputed that Rakamaric or Wachter copied any files from AMSI's LTLS Software for the purpose of using the copied**

#4747852V1

files to upgrade the Rakamaric Software to replicate the functionality of AMSI's LTLS Software. *Id.* at ¶ 24.

**COUNTERSTATEMENT**: **The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 43, as if it were fully set forth herein.**

53.    Rakamaric and Wachter followed the instructions of RHCR and the Law Firm Defendants. Among other things, Rakamaric and Wachter copied: (i) AMSI's entire database (including AMSI's proprietary Data Dictionary and all data); (ii) system information files; (iii) password file; (iv) pre-litigation forms; (v) litigation forms; (vi) all landlord-tenant related forms, and (vii) several entire fully functioning subsystems of AMSI's LTLS Software (Email Alerts Subsystem, Expired Rent Demands subsystem, Expired Petitions Subsystem, Holdover Subsystem, and Trial Letter Subsystem). (First Traina Dec., ¶132).

**RESPONSE: Disputed that the Law Firm Defendants instructed Rakamaric or Wachter to copy AMSI's LTLS Software. O'Connor Dec., Ex. A (June 16, 2016 Reply Affidavit of William J. Rappaport), ¶¶ 7-8, 10, 15-16; Second Rakamaric Dec. at ¶¶ 21, 24. Disputed that Rakamaric and Wachter copied AMSI's LTLS Software. First Rakamaric Dec. at ¶¶ 14, 19- 23, 29, 32, 39, 48, 52-57; Second Rakamaric Dec. at ¶¶ 10, 26, 29.**

54.    Email exchanges between RHCR and Rakamaric and/or Wachter reflect that their efforts to replicate the invoicing/billing functionality of AMSI's Software were still underway in 2016. (First Traina Dec., ¶132).

**RESPONSE: Disputed. O'Connor Dec., Ex. A (June 16, 2016 Reply Affidavit of William J. Rappaport), ¶¶ 7-8, 10, 15-16; Second Rakamaric Dec. at ¶¶ 21, 24.**

55.    Notably, the pre-litigation and litigation forms generated by AMSI's LTLS Software, including the various interchangeable paragraph allegations that are automatically

#4747852V1

inserted by the LTLS Software for different applications were pirated by Defendants for incorporation into the Rakamaric Software. (First Traina Dec., ¶133).

**RESPONSE**: **Objection, this SOMF should not, respectfully, be considered because the allegation whether certain applications of the LTLS Software were "pirated" is a conclusion of law and not a statement of fact in violation of L. Civ. R. 56.1(a). To the extent the remaining portions of this SOMF are considered, disputed that the Law Firm Defendants instructed Rakamaric or Wachter to copy AMSI's LTLS Software. O'Connor Dec., Ex. A (June 16, 2016 Reply Affidavit of William J. Rappaport), ¶¶ 7-8, 10, 15-16; Second Rakamaric Dec. at ¶¶ 21, 24. Disputed that Rakamaric and Wachter, in fact, copied AMSI's LTLS Software. First Rakamaric Dec. at ¶¶ 14, 19- 23, 29, 32, 39, 48, 52-57; Second Rakamaric Dec. at ¶¶ 10, 26, 29.**

**COUNTERSTATEMENT**: **The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 43, as if it were fully set forth herein.**

56.    Copying of AMSI's holdover petition form is documented in various email exchanges between staff members of RHCR and Rakamaric and/or Wachter. (First Traina Dec., Exhibit 21) These emails show that RHCR requested Rakamaric and Wachter to replicate AMSI's holdover petition form and the manner in which it is completed by AMSI's Holdover Subsystem.

**RESPONSE**: **Disputed. First Rakamaric Dec. at ¶¶ 14, 19- 23, 29, 32, 39, 48, 52-57; Second Rakamaric Dec. at ¶¶ 10, 26, 29.**

**COUNTERSTATEMENT**: **The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 43, as if it were fully set forth herein.**

57.    In violation of Sections 2.d and 3.d of the License Agreement, RHCR re-installed and continued to access and use a backup version of AMSI's LTLS Software after AMSI

29

terminated the License Agreement and disabled the software as permitted by the License Agreement. (Second Traina Dec., ¶9).

**RESPONSE:** Objection, this SOMF should not, respectfully, be considered because the allegation whether RHCR violated Sections 2.d or 3.d of the License Agreement are conclusions of law and not statements of fact in accordance with L. Civ. R. 56.1(a). To the extent the remaining portion of this SOMF are considered, disputed. Second Rakamaric Dec. at ¶¶ 24-29; Declaration of Michael Rosenthal ("Rosenthal Dec."), ¶¶ 7-9, 11, 12; Second Declaration of Steven M. Hertz ("Second Hertz Dec."), ¶¶ 7-9, 11, 12; Declaration of William J. Rappaport ("Rappaport Dec."), ¶¶ ¶¶ 7-9; Declaration of Marianne Nunziata ("Nunziata Dec."), ¶ 7.

**COUNTERSTATEMENT**: The LTLS Software contained client data, which was confidential business data that was protected by the attorney-client privilege. First Hertz Dec. at ¶¶ 34-36. AMSI agreed with RHCR that the firm's data was RHCR's and could not be copied. Second Rakamaric Dec. at ¶ 17; First Traina Dec., Ex. 19. RHCR had legal obligations to provide its clients with seamless service and without interruption with respect to landlord-tenant cases. Second Rakamaric Dec. at ¶ 18. Without the data, RHCR would be blind as to current cases. *Id.* at ¶ 19. After being so advised, Mr. Rakamaric copied an existing data folder in the RHCR-NYAPP onto the new RHCR-APPSRV server which contained RHCR data. *Id.* at ¶ 20. Mr. Rakamaric's intention was to copy data only; at the time he did not realize that the folder contained about 20 .asp scripts from AMSI regarding some email forwarding function. *Id.*

Upon learning that Mr. Rakamaric unintentionally transmitted twenty (20) .asp files to the RHCR-APPSRV Server, RHCR would have removed them immediately. O'Connor

Dec., Ex. A (June 16, 2016 Reply Affidavit of William J. Rappaport), ¶ 12; Hertz Dec. at ¶¶ 32-33. However, on June 9, 2016, in conjunction with AMSI's termination letter, RHCR received a preservation letter from AMSI demanding that, effective immediately, RHCR and its agents not alter, conceal, or destroy any computer-based evidence of any kind, or make any modifications to alterations to the software on RHCR's system. Second Rakamaric Dec., Ex. 2.

Mr. Traina includes the following purported "login file" in his declaration, without providing the Court with any documentary evidence to show that it is a legitimate log taken from a hard drive given to him by Defendants:

| Userid | Name | Logdate | Logtime |
|--------|------|---------|---------|
| ROSE | Rosenthal, Michael | 08/29/2016 | 14:31:33 |
| SMH | Steven M. Hertz | 09/12/2019 | 11:53:26 |
| PAUL | Paul, David | 12/12/2016 | 12:41:45 |
| WRAP | Rappaport, William J. | 11/09/2016 | 12:48:09 |
| GREG | GREG T. SMITH | 08/01/2016 | 15:05:54 |
| MARI | MARIANNE NUNZIATA | 10/21/2016 | 10:33:59 |
| INDI | India Data entry services | 08/10/2016 | 10:01:18 |
| HOWI | HOWARD LEVINE | 04/18/2017 | 11:00:30 |

Second Traina Dec. at ¶ 9. This screen shot does not demonstrate that the Law Firm Defendants accessed this information on these dates. Second Rakamaric Dec. at ¶ 6. Even assuming it did, most of these individuals are lawyers or the remaining law firm staff without computer engineering training and, as such, they are not capable of reverse engineering software or copying same. *Id.* at ¶ 30.

Even assuming this log is accurate, it proves nothing whatsoever because no one has continued to use the AMSI LTLS Software for any purpose following June 9, 2016. *Id.* at ¶¶ 12, 29. Neither Mr. Rakamaric nor any of the Law Firm Defendants are aware of any

attempts to access to the AMSI LTLS Software following June 9, 2016. Rosenthal Dec., ¶¶ 7-9, 11, 12; Second Hertz Dec., ¶¶ 7-9, 11, 12; Rappaport Dec., ¶¶ 7-9; Nunziata Dec., ¶ 7; Second Rakamaric Dec. at ¶¶ 24, 29.

While it is possible that the icon for the LTLS Software remained on several RHCR employees, home screens and that they accidently clicked on it on one occasion, at no time did they actively use the LTLS Software following the June 9, 2016 termination letter. Rosenthal Dec. at ¶ 10; Second Hertz Dec. at ¶¶ 10-11; Rappaport Dec. at ¶¶ 8-9; Second Rakamaric Dec. at ¶ 24, 29, 31. Assuming any RHCR employee clicked on the LTLS Software icon after the software was disabled by AMSI, as it appears to claim, then a user would have received an error message. Second Rakamaric Dec. at ¶ 32. It would have been impossible for any of these users to gain any commercial use of the same at any point after the filing of the State court action in June, 2016. *Id.* at ¶ 32.

58. Newly discovered evidence after the briefing of Defendants' summary judgment motion establishes that RHCR continued to access and use AMSI's LTLS Software for years after the June 9, 2016 termination of the License Agreement, an express violation of the License Agreement. (Second Traina Dec., ¶¶7-9).

**RESPONSE:** Objection, this SOMF should not, respectfully, be considered because the allegations whether access and use of the AMSI's LTLS Software after AMSI's unilateral June 9, 2016 termination violated the License Agreement is a conclusion of law and not a statement of fact in violation of L. Civ. R. 56.1(a). To the extent this SOMF is considered, in whole or in part, disputed that RHCR continued to access and use AMSI's LTLS Software for years after the June 9, 2016 termination. Rosenthal Dec. at ¶ 10; Second Hertz Dec. at ¶¶ 10-11; Rappaport Dec. at ¶¶ 8-9. Second Rakamaric Dec. at ¶ 24, 29, 31.

#4747852V1

**COUNTERSTATEMENT**: **The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 57, as if it were fully set forth herein.**

59.    A copy of RHCR's server was produced in discovery by RHCR and the Law Firm Defendants from the computer network located at RHCR's offices. (Second Traina Dec., ¶8). The server establishes that RHCR was in possession of an operational version of AMSI's LTLS Software at all times since 2007 — despite the June, 2016 termination of the parties' License Agreement. (Second Traina Dec., ¶7).

**RESPONSE: Objection, this SOMF should not, respectfully, be considered because it assumes that (a) AMSI terminated the License Agreement on June 9, 2016 in accordance with the terms of the License Agreement, or (b) RHCR's possession of the LTLS Software after June 9, 2016 was in violation of the terms of the License Agreement or its document preservation obligations because such allegations are conclusions of law and not statements of fact in accordance with L. Civ. R. 56.1(a). To the extent this SOMF is considered, admitted subject to the above objections.**

**COUNTERSTATEMENT**: **Section 2.d of the License Agreement provides,**

> **Either party may terminate the subscription and Software License on *60 days* prior notice for failure to comply with any terms of this Agreement, including Software License terms or Terms of Use. Immediately upon termination, Customer will no longer have any right to Use the Software and AMSI shall, as such, be permitted to de-install the Software from Customer's computer system by remote access or other means.**

**First Traina Dec., Ex. 19 at § 2.d (emphasis in original). AMSI did not provide RHCR 60 days' advance notice to its June 9, 2016 termination. Rappaport Dec. at ¶ 3; Rosenthal Dec. at ¶ 3; Second Hertz Dec. at ¶ 3; Second Rakamaric Dec. at ¶ 16. On June 9, 2016, in conjunction with AMSI's termination letter, RHCR received a preservation letter from AMSI demanding that, effective immediately, RHCR and its agents not alter, conceal, or**

#4747852V1

destroy any computer-based evidence of any kind, or make any modifications to alterations to the software on RHCR's system. *Id.* at Ex. 2. The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 57, as if it were fully set forth herein.

60.    Significantly, on March 23, 2021, RHCR inadvertently sent a copy of an operational version of AMSI's LTLS Software to AMSI on a removable hard drive. (Second Traina Dec., ¶8). The only reason that RHCR had an operational version of AMSI's Software is because it reinstalled a backup copy of AMSI's software after AMSI terminated the License Agreement. (Second Traina Dec., ¶9).

**RESPONSE: Admitted in part. Disputed in part. Admitted that on March 23, 2021, RHCR produced in discovery a copy of RHCR's-NYAPP Server. Disputed that RHCR's-NYAPP Server contained a copy of an operational version of AMSI's LTLS Software. Second Rakamaric Dec. at ¶ 29; Second Hertz Dec. at ¶ 8; Rosenthal Dec. at ¶ 11; Nunziata Dec. at ¶ 7. Disputed that RHCR reinstalled a backup copy of AMSI's LTLS Software following AMSI's purported June 9, 2016 termination of the License Agreement. Second Rakamaric Dec. at ¶ 29; Second Hertz Dec. at ¶ 8; Rosenthal Dec. at ¶ 11; Nunziata Dec. at ¶ 7.**

61.    This copy of the operational version of AMSI's LTLS Software inadvertently produced by RHCR and the Law Firm Defendants reveals that AMSI's LTLS Software was repeatedly accessed by RHCR attorneys after AMSI's termination of the License Agreement on June 9, 2016 through at least September, 2019, an express violation of the License Agreement. (Second Traina Dec., ¶9).

**RESPONSE: Objection, this SOMF should not, respectfully, be considered because whether certain alleged actions or omissions constitute "express violation[s] of the License**

Agreement" are conclusions of law and not statements of fact in accordance with L. Civ. R. 56.1(a). To the extent the remaining portion of this SOMF is considered, admitted in part and disputed in part. Admitted that on March 23, 2021, RHCR produced in discovery a copy of RHCR's-NYAPP Server. Disputed that RHCR's-NYAPP Server contained a copy of an operational version of AMSI's LTLS Software. Second Rakamaric Dec. at ¶ 29; Second Hertz Dec. at ¶ 8; Rosenthal Dec. at ¶ 11; Nunziata Dec. at ¶ 7. Disputed that AMSI's LTLS Software was repeatedly accessed by RHCR attorneys after AMSI's termination of the License Agreement. Rosenthal Dec., ¶¶ 7-9, 11, 12; Second Hertz Dec., ¶¶ 7-9, 11, 12; Rappaport Dec., ¶¶ 7-9; Nunziata Dec., ¶ 7; Second Rakamaric Dec. at ¶¶ 24, 29.

**COUNTERSTATEMENT**: The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 57, as if it were fully set forth herein.

62.    Specifically, login files contained in this unlawful copy of AMSI's LTLS Software shows that it was repeatedly accessed by RHCR attorneys from 2016 through at least September, 2019. *(Id.)*.

**RESPONSE: Disputed.** Rosenthal Dec., ¶¶ 7-9, 11, 12; Second Hertz Dec., ¶¶ 7-9, 11, 12; Rappaport Dec., ¶¶ 7-9; Nunziata Dec., ¶ 7; Second Rakamaric Dec. at ¶¶ 24, 29.

**COUNTERSTATEMENT**: The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 57, as if it were fully set forth herein.

63.    The only reason for such access was to further copy, use, and/or modify AMSI's LTLS Software. (Second Traina Dec., ¶10).

**RESPONSE: Disputed.** Rosenthal Dec., ¶¶ 7-9, 11, 12; Second Hertz Dec., ¶¶ 7-9, 11, 12; Rappaport Dec., ¶¶ 7-9; Nunziata Dec., ¶ 7; Second Rakamaric Dec. at ¶¶ 24, 29.

**COUNTERSTATEMENT**: **The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 57, as if it were fully set forth herein.**

64.      For all of the above reasons, RHCR has materially breached the License Agreement by, among other things: (i) possessing, accessing and using its infringing version of the LTLS Software after the termination of the License Agreement; (ii) engaging in unauthorized copying of the LTLS Software after the termination of the License Agreement; (iii) modifying the LTLS Software; (iv) making "derivative" works of the LTLS Software; (v) violating the confidentiality requirements of the License Agreement, including after the termination of the License Agreement; (vi) making unauthorized back-up copies of the LTLS Software, and (v) re-installing the LTLS Software.

**RESPONSE: Objection, this SOMF should not, respectfully, be considered because (a) whether certain alleged actions or omissions of RHCR constitute material breaches of the License Agreement are conclusions of law and not statements of fact in accordance with L. Civ. R. 56.1(a); (b) its reference or incorporation of "all of the above reasons" is vague and ambiguous as to the reasons proffered; and (c) it fails to include a citation to admissible evidence in violation of Fed. R. Civ. P. 56(c) and L. Civ. R. 56.1(d). To the extent this SOMF is considered, the Law Firm Defendants incorporate all of their Responses to AMSI's SOMF ¶¶ 1-63 above as if fully set forth herein.**

65.      RHCR has breached the License Agreement by continuing to possess, access and use the LTLS Software after the termination of the License Agreement in June, 2016 through at least September, 2019 (and continues to do so).

**RESPONSE: Objection, this SOMF should not, respectfully, be considered because whether certain alleged actions or omissions of RHCR constitute breaches of the License**

#4747852V1

**Agreement are conclusions of law and not statements of fact in accordance with L. Civ. R. 56.1(a). To the extent the remaining portions of this SOMF are considered, disputed that RHCR has continued to possess, access, and use the LTLS Software after the purported June 9, 2016 termination of the License Agreement. Disputed. Rosenthal Dec., ¶¶ 7-9, 11, 12; Second Hertz Dec., ¶¶ 7-9, 11, 12; Rappaport Dec., ¶¶ 7-9; Nunziata Dec., ¶ 7; Second Rakamaric Dec. at ¶¶ 24, 29.**

66.     There is an existing and valid contract between the parties. (E.g., Defendants' Rule 56.1 Statement, at 5; Exhibit 19 to First Traina Aff.)

**RESPONSE: Objection, this SOMF should not, respectfully, be considered because whether "[t]here is an existing and valid contract between the parties" is a conclusion of law and not a statement of fact in accordance with L. Civ. R. 56.1(a). To the extent this SOMF is considered, admitted that RHCR and AMSI entered into the License Agreement, among other agreements, whose terms, effectiveness, and validity speak for themselves. First Hertz Dec. at ¶¶ 3-4; *id.*, Ex. A-B.**

67.     AMSI has performed its obligations under the License Agreement. (Second Traina Dec. ¶13).

**RESPONSE: Objection, this SOMF should not, respectfully, be considered because (a) whether AMSI performed its obligations under the License Agreement is a conclusion of law and not a statement of fact in accordance with L. Civ. R. 56.1(a); (b) AMSI's alleged "performance" of its "obligations" is vague and ambiguous; and (c) the citation offered in support of this SOMF, Paragraph 13 of the Second Traina Declaration, provides no basis to conclude that it is a fact made on personal knowledge or premised on admissible evidence on which Mr. Traina is competent to testify in violation of Fed. R. Civ. P. 56(c)(4). To the extent**

#4747852V1

this SOMF is considered, the Law Firm Defendants incorporate all of their Responses to AMSI's SOMF ¶¶ 1-66 above as if fully set forth herein.

68.    RHCR has materially breached the License Agreement in several respects (Second Traina Aff. ¶ 13).

**RESPONSE: Objection, this SOMF should not, respectfully, be considered because (a) whether certain alleged actions or omissions of RHCR constitute material breaches of the License Agreement are conclusions of law and not statements of fact in accordance with L. Civ. R. 56.1(a); (b) its reference to "several respects" is vague and ambiguous; and (c) the citation offered in support of this SOMF, Paragraph 13 of the Second Traina Declaration, provides no basis to conclude that it is a fact made on personal knowledge or premised on admissible evidence on which Mr. Traina is competent to testify in violation of Fed. R. Civ. P. 56(c)(4). To the extent this SOMF is considered, the Law Firm Defendants incorporate all of their Responses to AMSI's SOMF ¶¶ 1-67 above as if fully set forth herein.**

## AMSI'S DAMAGES ON ITS BREACH OF CONTRACT CLAIM

69.    AMSI has been damaged by RHCR's numerous violations of the License Agreement for, among other reasons, that RHCR: (i) re-installed AMSI's LTLS Software in order to allow RHCR to continue to use and modify AMSI's LTLS Software after the termination of the License Agreement without paying the monthly license fees of $3,975.00; (ii) improperly utilizing AMSI's LTLS Software to create a "derivative work" in order to allow RHCR to incorporate AMSI's proprietary technology into a competing software package, i.e., the Rakamaric Software, after the termination of the License Agreement without paying the contractually agreed to monthly license fee of $3,975.00. (Second Traina Dec.,¶ 12; Exhibit 19 to the First Traina Dec.).

**RESPONSE: Objection, this SOMF should not, respectfully, be considered because (a) whether: (i) AMSI has been "damaged," (ii) RHCR violated the License Agreement, (iii)**

RHCR "improperly" utilized AMSI's LTLS Software, and (iv) the License Agreement provides for a monthly license fee of $3,975 under these circumstances are conclusions of law and not statements of fact in accordance with L. Civ. R. 56.1(a); and (b) the reference to "among other reasons" is vague and ambiguous. To the extent the remaining allegations in this SOMF are considered, the Law Firm Defendants: (a) admit that AMSI cashed the last check for AMSI licensing fees on or about June 5, 2016, First Hertz Dec. at ¶ 20; (b) disputed that they ever agreed to a licensing fee with AMSI following AMSI's unilateral termination, Second Hertz Dec. at ¶¶ 13-14; Second Rosenthal Dec. at ¶ 13; and (c) disputed the remaining portion of this SOMF by incorporating their Responses to SOMF ¶¶ 48 and 57, as if fully set forth herein.

70.    RHCR continued and continues to possess, access, modify, use and/or copy the LTLS Software after the License Agreement was validly terminated by AMSI in June, 2016 until at least September, 2019. The License Agreement establishes the license fee that RHCR was obligated to pay for continued possession, access, copying and/or use of AMSI's LTLS Software. (Second Traina Dec., ¶18).

**RESPONSE: Objection, this SOMF should not, respectfully, be considered because (a) whether (i) "[t]he License Agreement establishes the license fee that RHCR was obligated to pay for continued possession, access, copying and/or use of AMSI's LTLS Software," and (ii) the License Agreement was validly terminated by AMSI on June 2016 are conclusions of law and not statements of fact in accordance with L. Civ. R. 56.1(a). To the extent the remaining allegations are considered: (a) disputed that the License Agreement establishes a license fee that RHCR is required to pay following AMSI's purported unilateral June 9, 2016 termination of the License Agreement, First Hertz Dec., Ex. B; (b) disputed that AMSI**

validly terminated RHCR, for all the reasons set forth in the Law Firm Defendants' Counterstatement to SOMF ¶ 59, (c) disputed that RHCR ever agreed to a licensing fee with AMSI for payment of licensing fees for any period following AMSI's unilateral termination, Second Hertz Dec. at ¶¶ 13-14; Second Rosenthal Dec. at ¶ 13; and (d) disputed that RHCR possesses, accesses, modified, use, or copy the LTLS Software following the June 9, 2016 unilateral termination for all the reasons set forth in the Law Firm Defendants' Response to SOMF ¶ 57.

**COUNTERSTATEMENT**: The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 57, as if it were fully set forth herein.

71.    Accordingly, AMSI is entitled to the monthly license fee of $3,975 for the period after the termination of the License Agreement from June, 2016 through September, 2019, This currently amounts to 41 months of unpaid license fees, which totals $162,974 as of September, 2019. (Second Traina Dec., ¶19).

**RESPONSE: Objection, this SOMF should not, respectfully, be considered because whether AMSI is entitled to a monthly license fee is a conclusion of law and not a statement of fact in accordance with L. Civ. R. 56.1(a). To the extent the remaining allegations are considered: (a) disputed that the License Agreement establishes a license fee that RHCR is required to pay following AMSI's purported unilateral June 9, 2016 termination of the License Agreement, First Hertz Dec., Ex. B; (b) disputed that AMSI validly terminated RHCR, for all the reasons set forth in the Law Firm Defendants' Counterstatement to SOMF ¶ 59, (c) disputed that RHCR ever agreed to a licensing fee with AMSI for payment of licensing fees for any period following AMSI's unilateral termination, Second Hertz Dec. at ¶¶ 13-14; Second Rosenthal Dec. at ¶ 13; and (d) disputed that RHCR possesses, accesses,**

modified, use, or copy the LTLS Software following the June 9, 2016 unilateral termination for all the reasons set forth in the Law Firm Defendants' Response to SOMF ¶ 57.

**COUNTERSTATEMENT**: The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 57, as if it were fully set forth herein.

72.    In addition, because of RHCR's continued use of AMSI's proprietary software technology and the functionality of the LTLS Software by incorporating it into the Rakamaric Software in violation of the License Agreement, it should be required to pay the monthly license fee from October, 2019 to May, 2022 for this improper use. This amounts to 32 months for a total of $127,200 (and for each month thereafter that RHCR continues to unlawfully use AMSI's proprietary software technology and the functionality of the LTLS Software). (Second Traina Dec., ¶20).

**RESPONSE: Objection, this SOMF should not, respectfully, be considered because (a) whether (i) RHCR's alleged actions or omissions violated the License Agreement, (ii) RHCR "improper[ly]" or "unlawfully" used the LTLS Software, or (iii) RHCR owes AMSI a license fee are conclusions of law and not statements of fact in accordance with L. Civ. R. 56.1(a). To the extent the remaining allegations are considered, To the extent the remaining allegations are considered: (a) disputed that the License Agreement establishes a license fee that RHCR is required to pay following AMSI's purported unilateral June 9, 2016 termination of the License Agreement, First Hertz Dec., Ex. B; (b) disputed that AMSI validly terminated RHCR, for all the reasons set forth in the Law Firm Defendants' Counterstatement to SOMF ¶¶ 59, (c) disputed that RHCR ever agreed to a licensing fee with AMSI for payment of licensing fees for any period following AMSI's unilateral termination, Second Hertz Dec. at ¶¶ 13-14; Second Rosenthal Dec. at ¶ 13; and (d) disputed**

#4747852V1

that RHCR possesses, accesses, modified, use, or copy the LTLS Software following the June 9, 2016 unilateral termination for all the reasons set forth in the Law Firm Defendants' Response to SOMF ¶ 57.

**COUNTERSTATEMENT**: The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 57, as if it were fully set forth herein.

73.    Accordingly, AMSI should be awarded a total of $290,174, plus interest, and continuing license fee damages for each month that RHCR remains in possession of AMSI's LTLS Software and/or continues to use to utilize the functionality thereof. (Second Traina Dec., ¶21).

**RESPONSE: Objection, this SOMF should not, respectfully, be considered because whether AMSI should be awarded any amount of damages and interest is a conclusion of law and not a statement of fact in accordance with L. Civ. R. 56.1(a). To the extent the remaining allegations are considered: (a) disputed that the License Agreement establishes a license fee that RHCR is required to pay following AMSI's purported unilateral June 9, 2016 termination of the License Agreement, First Hertz Dec., Ex. B; (b) disputed that AMSI validly terminated RHCR, for all the reasons set forth in the Law Firm Defendants' Counterstatement to SOMF ¶ 59, (c) disputed that RHCR ever agreed to a licensing fee with AMSI for payment of licensing fees for any period following AMSI's unilateral termination, Second Hertz Dec. at ¶¶ 13-14; Second Rosenthal Dec. at ¶ 13; and (d) disputed that RHCR possesses, accesses, modified, used, or copied the LTLS Software following the June 9, 2016 unilateral termination for all the reasons set forth in the Law Firm Defendants' Response to SOMF ¶ 57.**

**COUNTERSTATEMENT**: The Law Firm Defendants incorporate their Counterstatement to SOMF ¶ 57, as if it were fully set forth herein.

42

Dated: New York, New York
       May 23, 2022

                      Respectfully submitted,

                      PECKAR & ABRAMSON, P.C.

                      By: */s/ Kevin J. O'Connor*
                              Kevin J. O'Connor

                      *Attorneys for Defendants*

                      1325 6th Ave 10th Floor
                      New York, NY 10019
                      (212) 382-0909
                      koconnor@pecklaw.com

#4747852V1