UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

AUTOMATED MANAGEMENT
SYSTEMS, INC.,

               Plaintiff,

      -v-                                   No.  16-CV-04762-LTS-JW

RAPPAPORT HERTZ CHERSON
ROSENTHAL, P.C., WILLIAM
RAPPAPORT, STEVEN M. HERTZ, ELIOT
J. CHERSON, MICHAEL C. ROSENTHAL,
BRANKO RAKAMARIC, and BEN
WACHTER,

               Defendants.

--------------------------------------------------------x

### Memorandum Order

       Plaintiff Automated Management Systems, Inc. ("Plaintiff" or "AMSI") brings

this action against Defendants Rappaport Hertz Cherson Rosenthal, P.C. ("RHCR"), RHCR's

four named partners, William Rappaport, Steven M. Hertz, Eliot J. Cherson, and Michael C.

Rosenthal (collectively, the "Law Firm Defendants" or "LFD"), and Branko Rakamaric

("Rakamaric") (collectively, the "Defendants"),[1] asserting claims for copyright infringement,

trade secret misappropriation under 18 U.S.C. section 1836 (the Defend Trade Secrets Act, or

"DTSA") and common law claims for unfair competition, breach of contract (against RHCR),

and tortious interference with a contract (against Defendant Rakamaric).  The Court has

jurisdiction of Plaintiff's federal copyright infringement and DTSA claims pursuant to 28 U.S.C.

---

[1]      On July 18, 2024, the Court entered a consent injunction pursuant to a settlement
agreement between AMSI and Ben Wachter, which settled all claims against Wachter in
this action.  (Docket entry no. 418.)

sections 1331 and 1338 and has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. section 1367.

Before the Court are pretrial motions in limine filed by the Law Firm Defendants (docket entry no. 422 ("LFD Motion")), which pro se defendant Rakamaric joins (docket entry no. 425 ("Rakamaric Mem.")), and AMSI (docket entry no. 420 ("AMSI Motion")). The Court has reviewed the parties' submissions carefully and, for the following reasons, grants in part and denies in part each of the Motions.

<u>BACKGROUND</u>

The general background of this case and the relevant procedural posture are described in the Court's March 31, 2022 Memorandum Opinion and Order (docket entry no. 302 (the "March Order")), and September 19, 2023 Memorandum Opinion and Order (docket entry no. 389). Familiarity with the general context and procedural history of the case is assumed for the purposes of this Memorandum Order. Here, the Court provides an overview of the facts relevant to the instant motion practice. Unless otherwise indicated, the following facts are undisputed.

AMSI is a New York corporation that makes and licenses software products (see docket entry no. 170 ("Third Amended Complaint," or "TAC") ¶ 1), including a program called the Landlord Tenant Legal System ("LTLS," or the "AMSI Software"), which AMSI licensed on a month-to-month basis to RHCR, a landlord-tenant law firm, pursuant to a License Agreement, entitled the "Software Subscription Agreement," entered into on January 2, 2007. (See TAC at Exhibit C (the "Agreement").) The License granted RHCR the right to "Use" the Software, which the Agreement defined as "storing, loading, installing, executing, or displaying the Software on a single device or series of devices, and use of the [AMSI] Software by way of End

User's server, which allows use of the [AMSI] Software by all users in that environment."
(Agreement § 1(b).)  The AMSI Software was stored in a server on RHCR's computer network
called RHCR-NYAPP.  (Docket entry no. 325 ("Pl. 56.1 St.") ¶ 29.)  In 2015, RHCR contacted
Rakamaric, a computer programmer, regarding installation of a new software platform (the
"Rakamaric Software" or "LT Work") to replace the AMSI Software, and an agreement to that
effect was signed on October 1, 2015.  To help install the Rakamaric Software, Rakamaric
retained Ben Wachter, and the Law Firm Defendants provided Rakamaric and Wachter with a
server location entitled RHCR-APPSRV to conduct the development and installation of their
program.  (Id. ¶ 27.)  RHCR did not notify AMSI of this new agreement until James Traina, one
of AMSI's principals, noticed the new server in May 2016.  In June 2016, AMSI cut off RHCR's
access to the LTLS Software.

       The AMSI Software and the Rakamaric Software are primarily written in different
programming languages (see docket entry no. 237 ("Pl. SOF Response") ¶¶ 15, 16), but perform
many of the same functions (see id. ¶ 110).  AMSI alleges, and Defendants deny, that Rakamaric
and Wachter achieved much of the Rakamaric Software's functionality by studying proprietary
source code and sub-components of the AMSI Software that had allegedly been copied to the
RHCR-APPSRV server and then using this proprietary information to effectively duplicate the
AMSI Software in another coding language.  (TAC ¶¶ 44, 45.)  AMSI alleges, and the Law Firm
Defendants deny, that the Law Firm Defendants gave Rakamaric and Wachter "unfettered
access" to AMSI's Software to facilitate this duplication.  (Docket entry no. 235 ("First Traina
Decl.") ¶ 12.)

After the Court denied all motions for summary judgment, the Court issued an Amended Pretrial Scheduling Order that set the deadline for pretrial motions <u>in limine</u> in this case.  A bench trial on all claims is scheduled for February 2025.

<u>D</u>ISCUSSION

"The purpose of in limine motions is to enable the Court to rule on disputes over the admissibility of discrete items of evidence."  <u>See</u> <u>TVT Records v. Island Def Jam Music Grp.</u>, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003); <u>see</u> <u>also</u> Fed. R. Evid. 104 ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible.").  Such rulings "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  <u>Palmieri v. Defaria</u>, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks and citation omitted).  Generally, a court should admit relevant evidence that is "of consequence in determining the action" or that tends "to make a fact more or less probable."  Fed. R. Evid. 401.  "Evidence challenged in a motion <u>in limine</u> should only be precluded when it is clearly inadmissible on all possible grounds."  <u>Uzhca v. Wal-Mart Stores, Inc.</u>, No. 17-CV-3850-NSR, 2023 WL 2529186, at *5 (S.D.N.Y. Mar. 15, 2023).

<u>LFD Motion</u>

The Law Firm Defendants and Rakamaric move for pretrial rulings precluding AMSI from (1) calling witnesses and proffering evidence not properly identified or produced, respectively, during discovery, (2) proffering expert testimony not disclosed during discovery, (3) introducing prior sworn statements made by now-deceased James Traina as direct evidence, (4) presenting evidence of actual damages, (5) introducing evidence of a consent judgment

entered into by AMSI and non-party Ben Wachter (<u>see</u> docket entry no. 418 ("Wachter Consent Judgment")), and (6) presenting any evidence in support of its copyright infringement claim. (LFD Motion; docket entry no. 423 ("LFD Supp. Mem.").)  Defendants further seek (1) a preliminary ruling permitting them to introduce pleadings from prior litigations involving AMSI into evidence at trial and (2) a sequestration order for AMSI's witnesses at trial.  (LFD Motion.)

<u>Undisclosed Witnesses and Unproduced Evidence</u>

Defendants move to preclude AMSI from offering any witnesses at trial other than those disclosed in AMSI's Rule 26(a) disclosures, Iuri Reimer and Antonia Traina.  (LFD Supp. Mem. at 12.)  AMSI argues the Court should deny Defendants' motion and allow AMSI to call "one or more employees (or former employees) of non-party Krantz Secure Technologies." (Docket entry no. 430 ("Pl. Opp. Mem.") at 7-8; docket entry no. 433 ("LFD Reply Mem.") at 3.)

The Federal Rules of Civil Procedure require at the initiation of a lawsuit that parties disclose the name of "each individual . . . that the disclosing party may use to support its claims or defenses[.]"  Fed. R. Civ. P. 26(a)(1)(A)(i).  Parties are obligated to supplement or correct their initial Rule 26 disclosures "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).  AMSI argues that the Krantz employees were "identified in discovery disclosures" (AMSI does not, however, specify when or where they were so identified) and subpoenaed by AMSI during discovery.  (Pl. Opp. Mem. at 7-8.)  As Defendants correctly argue, "mere mention of a name in a deposition or interrogatory response is insufficient to satisfy Rule 26(a)(1)(A)(i)."  <u>Lujan v. Cabana Mgmt., Inc.</u>, 284 F.R.D. 50, 72 (E.D.N.Y. 2012) (collecting cases); <u>Pal v. N.Y. Univ.</u>, No. 06-CV-5892-PAC-FM, 2008 WL 2627614, at *4

(S.D.N.Y. June 30, 2008) ("Pal's knowledge of the existence of a witness does not satisfy [Rule 26]; that obligation is fulfilled only if NYU informed Pal that it might call the witness in support of its claims or defenses.").  AMSI's representation that the names of Krantz Technologies employees were mentioned in discovery is insufficient, by itself, to establish that AMSI satisfied the proactive disclosure requirements of Rule 26(a)(1).

> The penalty for a party failing to disclose required witnesses under Rule 26(a)(1) is preclusion of the witness's testimony under Rule 37(c)(1) unless the failure to comply was "substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1); see also Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006) (outlining four "factors" the Court must consider in determining an application to preclude testimony under Rule 37, which include the party's explanation for the failure to comply with discovery, the importance of the testimony, the prejudice suffered by the opposing party, and the possibility of a continuance).  AMSI has failed to offer any, let alone "substantial," justification for its failure to comply with the Rule 26(a)(1) requirements.  Nor has AMSI proffered any argument regarding the importance of the testimony of the Krantz employees.  Defendants, on the other hand, have persuasively argued that they would be significantly prejudiced by having to rebut this new testimony, particularly considering that discovery in this action has been closed for several years.  Therefore, Defendants' motion is granted with respect to the potential testimony of any employees of Krantz Secure Technologies and any other trial witnesses as to whom AMSI failed to make proper and timely disclosure pursuant to Rule 26(a)(1).

> Next, Defendants seek to preclude AMSI from offering documentary evidence that was not produced in discovery.  Defendants specifically argue that AMSI never produced

"any license from SBT[2] to it for its continued use of SBT's copyrighted software," as well as a "full and complete copy of the computer code for the affected work." (LFD Supp. Mem. at 12-13.) AMSI does not respond directly to these arguments and, as such, is deemed to have conceded these points. AMSI is therefore precluded from proffering at trial either identified piece of evidence.[3]

To the extent that Plaintiff seeks clarification that Defendants may also be moving to preclude AMSI from proffering _all_ evidence that Plaintiff did not _itself_ produce in discovery (Pl. Opp. Mem. at 8), the Court does not construe the LFD Motion in that fashion because such a request would be overly broad, vague, and contrary to the Federal Rules. Viada v. Osaka Health Spa, Inc., No. 04-CV-2744-VM-KNF, 2005 WL 3435111, at *1 (S.D.N.Y. Dec. 12, 2005); Bovell v. City of Mount Vernon, No. 21-CV-1621-AEK, 2023 WL 3559544, at *8 (S.D.N.Y. May 18, 2023) (denying without prejudice to renewal a motion _in limine_ "broadly and vaguely" seeking to preclude ill-defined categories of evidence). Defendants are not, however, precluded from making timely objections to specific evidence.

Expert Testimony

Defendants next move for an order barring AMSI from presenting _any_ expert testimony, as a penalty for AMSI's failure to comply with discovery deadlines for the disclosure

---

[2]    Defendants identify SBT as a non-party software company that owned a copyright to certain computer code that, Defendants assert, AMSI used to devise its LTLS program. (LFD Supp. Mem. at 3.)

[3]    This does not, however, preclude AMSI from offering _pieces_ of the LTLS software code into evidence. Defendants do not argue that AMSI failed to produce the full copy of the computer code despite applicable discovery requests, nor that a broader preclusion of _all_ evidence pertaining to the software code is warranted or necessary. To the extent AMSI properly produced pieces of the code in discovery, nothing in this Order shall preclude AMSI from presenting that evidence at trial, and Defendants are free to make appropriate objections at that time.

of expert reports.  (LFD Supp. Mem. at 14.)  Rule 26(a)(2) requires that parties disclose the identity of any witness they may use at trial to present expert testimony.  Fed. R. Civ. P. 26(a)(2)(A); see also Fed. R. Civ. P. 26(a)(2)(D) ("A party must make these disclosures at the time and in the sequence that the court orders.").  Magistrate Judge Fox set a final deadline for expert disclosures in this case on October 5, 2020, after numerous extensions.  (Docket entry nos. 181, 196, 203.)  On August 29, 2023, Magistrate Judge Willis denied AMSI's request to reopen discovery to provide, in relevant part, expert disclosures.  (Docket entry no. 388.)  Under these circumstances, Rule 37 authorizes the Court to preclude AMSI from offering the expert testimony of any witnesses not disclosed in its Rule 26(a) disclosures if the failure to disclose was not "substantially justified or harmless."

AMSI contends that it should be allowed to offer the testimony of Iuri Reimer,[4] AMSI's chief programmer, who was identified in AMSI's initial Rule 26(a)(1)(A)(i) disclosures as a relevant fact witness, as an expert on the LTLS software and the accused software.  (Pl. Opp. Mem. at 10.)  Although non-retained expert witnesses are not required to provide written reports, a party's expert disclosures must still state "the subject matter on which the witness is expected to present evidence," and provide "a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C).  AMSI did neither with respect to Reimer; nor does AMSI argue that it complied with the formal disclosure requirements of Rule 26(a)(2)(C).  Instead, AMSI seemingly argues that its failure to comply was harmless because Mr. Reimer's

---

[4]    Defendants also argue that AMSI should be precluded from offering the testimony of Antonia Traina as an expert because her direct financial interest in the outcome of the litigation would bias her testimony.  (LFD Supp. Mem. at 15 (citing Perfect 10, Inc. v. Giganews, Inc., No. CV-11-7098, 2014 WL 10894452, at *4 (C.D. Cal. Oct. 31, 2014)).)  AMSI does not respond to this argument and is accordingly deemed to concede that it is precluded from offering the testimony of Antonia Traina as an expert.

expertise and the underlying facts and opinions upon which his testimony will be based were

made known to Defendants through AMSI's 26(a)(1) disclosures and the Traina declaration that

is discussed below.  (Pl. Opp. Mem. at 10.)

        AMSI's argument that Defendants had appropriate notice of Mr. Reimer's

testimony because of the disclosures provided for him as a fact witness is unavailing.  The mere

fact that AMSI produced during discovery the underlying facts, evidence, and work upon which

Mr. Reimer would testify — including information largely contained in James Traina's

declaration (Pl. Opp. Mem. at 10; docket entry no. 324 ("Traina Decl.")) — did not, by itself, put

Defendants on notice that Plaintiffs intended to present expert testimony based on that

information through Mr. Reimer.  See Chevron Corp. v. Donziger, No. 11-CV-0691-LAK, 2013

WL 5493996, at *2 (S.D.N.Y. Oct. 3, 2013) (finding that defendant's failure to provide Rule

26(a)(2)(C) disclosures was not harmless despite their argument that plaintiff had "full

knowledge of the work performed by certain fact witnesses with expertise listed in Defendants'

witness lists by virtue of [materials produced in discovery]" because plaintiff could not be

expected to "parse" the record to "discern the topics which, and more particularly the opinions

about which, each witness will testify").  While "it is true that the disclosure required under Rule

26(a)(2)(C) is considerably less extensive than the report required by Rule 26(a)(2)(B)[,] . . .

[that requirement] would be gutted if such cursory 'disclosures' were deemed acceptable."  Id.;

see also Puglisi v. Town of Hempstead Sanitary Dist. No. 2, No. 11-CV-0445, 2013 WL

4046263, at *4-6 (E.D.N.Y. Aug. 8, 2013) (finding plaintiff's disclosure of a brief summary of

facts and opinions to be insufficient under Rule 26(a)(2)(C)); Anderson v. E. CT Health Network,

Inc., No. 12-CV-0785, 2013 WL 5308269, at *1 (D. Conn. Sept. 20, 2013) (precluding expert

testimony where "[p]laintiff has identified only one of the opinions that [the witness] is expected

to render and otherwise has failed to provide the straightforward summary of facts and opinions required by Rule 26(a)(2)(C)(ii)").

For these reasons, the Court finds that AMSI's disclosures failed to satisfy Rule 26(a)(2)(C) with respect to any proposed expert testimony by Iuri Reimer.  Because AMSI has failed to proffer substantial justification, and the inclusion of such expert testimony at this stage is highly likely to prejudice Defendants, AMSI is precluded pursuant to Rule 37(c)(1) from offering Iuri Reimer as an expert witness.  This ruling does not preclude AMSI from proffering Mr. Reimer as a fact witness.

<u>Traina Declaration</u>

Defendants, referring to the contents of a lengthy declaration filed by AMSI in connection with the prior summary judgment motion practice, move for a pretrial ruling precluding AMSI from proffering the prior sworn statements of now-deceased James Traina, AMSI's Chief Executive Officer during the relevant period, arguing that those statements constitute inadmissible hearsay for which no exception applies.  (LFD Supp. Mem. at 16.)  In response, AMSI represents that it "does not intend to introduce prior sworn statements by James Traina."  (Pl. Opp. Mem. at 11.)  In light of AMSI's representation, Defendants' motion is denied as moot to the extent it seeks preclusion of the prior sworn statements of Mr. Traina as evidence in AMSI's case.

<u>Actual Damages</u>

Defendants seek an order precluding AMSI from offering any evidence of actual damages due to AMSI's failure to provide an explanation of how it computed any such asserted damages.  (LFD Supp. Mem. at 10.)  "Rule 26 of the Federal Rules of Civil Procedure requires a plaintiff to disclose 'a computation of each category of damages claimed,' and to provide an

opportunity for the defendant to review the evidence used to calculate damages."  New York v. United Parcel Serv., Inc., 942 F.3d 554, 591 (2d Cir. 2019) (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)).  The consequence of a party's failure to comply with the Rule 26(a) proactive disclosure requirements is preclusion of evidence under Rule 37(c)(1) "unless the failure was substantially justified or harmless."  Id. (citing Fed. R. Civ. P. 37(c)(1)).

AMSI asserts that it seeks actual damages for "(a) AMSI's lost revenues, [and] (b) Defendants' profits," in addition to statutory damages.  (Pl. Opp. Mem. at 6.)  AMSI claims that it complied with Rule 26(a)'s disclosure requirements for its computation of actual damages because it "produced the documents in its possession that support its claim for damages," including the License Agreements and portions of its tax returns and financial statements showing AMSI's development costs.  (Id. at 6.)  AMSI further asserts that any unproduced evidence in support of AMSI's calculation for actual damages would consist of information in Defendants' possession, which Defendants "resisted providing" during discovery.  (Id. at 6-7.)  As explained in its briefing and in its 2022 motion for partial summary judgment (docket entry no. 310), AMSI computed the amount of its lost revenues based on AMSI's lost license fees, accruing at a rate of $3,975.00 per month since June 2016.  (Pl. Opp. Mem. at 6-7; Pl. MSJ Mem. at 22-23; Traina Decl. ¶¶ 12, 20.)  AMSI stated that its computation of "Defendants' profits" was based on "historic revenues of the Law Firm Defendants using AMSI's LTLS Software."  (Pl. Opp. Mem. at 7.)  AMSI asserted that it could not calculate Rakamaric's profits from licensing LT Work because he resisted providing any information regarding his revenues in discovery.  (Id.)

The record presented in connection with this motion practice only demonstrates that AMSI has provided the requisite comprehensive disclosure of its calculation of actual

damages representing the lost licensing fee accruing monthly at a rate of $3,975.00 since June

2016.  (See Traina Decl. ¶¶ 12, 20.)  To the extent that AMSI now attempts to supplement that

calculation with additional (unspecified) computations regarding its "development costs" and

Defendants' historic revenues, the computations should have been disclosed to Defendants under

Rule 26(a)(1)(A)(iii).  As discussed above, the deadline for such disclosures is long past.  While

Defendants' refusal to comply with certain discovery requests[5] may have frustrated Plaintiff's

ability to obtain evidence enabling it to compute damages claim figures, the Court finds no

substantial justification for Plaintiff's failure to disclose the formula upon which it intended to

base its calculation of actual damages to the extent such a damages claim would have been based

on information requested from, but not produced by, Defendants.  Due to the highly prejudicial

effect of Plaintiff's non-disclosure, the Court precludes AMSI from presenting evidence of actual

damages based on any undisclosed computations, including its "development costs" and

Defendants' revenues and profits.  This ruling does not, however, preclude AMSI from

presenting evidence of its previously disclosed computation of damages arising from the lost

licensing fee.

> Wachter Consent Judgment

Defendants also seek a ruling that AMSI cannot offer as direct evidence

admissions made as part of the Consent Judgment entered into by AMSI and non-party Ben

Wachter.  (LFD Supp. Mem. at 21; see also Wachter Consent Judgment.)  Rule 408 of the

---

[5]    In July 2021, Defendants were sanctioned for their failure to comply with certain
discovery requests, but Magistrate Judge Fox declined to issue sanctions for "defendants'
purported failure to produce documents relating to revenues and costs associated with the
Rakamaric software." (Docket entry no. 274, at 16-17.)  In August 2023, furthermore,
Magistrate Judge Willis denied Plaintiff's request to reopen discovery, finding that
Plaintiff failed to pursue outstanding discovery materials in a timely and diligent manner.
(Docket entry no. 388.)

Federal Rules of Evidence makes inadmissible evidence "either to prove or disprove the validity
or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction"
"furnish, promising, or offering . . . a valuable consideration in compromising or attempting to
compromise the claim[.]"  Fed. R. Evid. 408(a); <u>see also</u> 1974 Advisory Comm. Note ("This
Rule as reported makes evidence of settlement . . . of a disputed claim inadmissible when offered
as an admission of liability or the amount of liability.").  Evidence of a settlement agreement and
its surrounding circumstances, "though otherwise barred by Rule 408, can fall outside the Rule if
it is offered for 'another purpose' i.e., for a purpose other than to prove or disprove the validity of
the claims that [the agreement was] meant to settle."  <u>Starter Corp. v. Converse, Inc.</u>, 170 F.3d
286, 293 (2d Cir. 1999) (internal citation omitted).  Enumerated exceptions include "proving a
witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct
a criminal investigation or prosecution."  Fed. R. Evid. 408(b).  The District Court has "broad
discretion as to whether to admit evidence of settlement . . . offered for 'another purpose.'"
<u>Starter Corp</u>, 170 F.3d at 293 (citation omitted).

       AMSI argues that the factual admissions in the Consent Judgment should be
admissible because "Mr. Wachter made admissions having a significant bearing on liability."  (Pl.
Opp. Mem. at 15.)  This is precisely the type of use of settlement-related material that Rule 408
seeks to prevent.  The facts that — as AMSI argues — Defendants "chose not to depose Mr.
Wachter" and that they were "certainly fully aware of the work performed by Mr. Wachter" have
no relevance on this analysis.  (<u>See id.</u>)  Therefore, Defendants' motion is granted to the extent
AMSI seeks to offer admissions from the Wachter Judgment to prove liability of the remaining
Defendants.  This decision does not preclude AMSI from proffering such evidence "for another

purpose," subject to a final determination of admissibility at trial and without prejudice to any further defense objections.

<u>Copyright Infringement Claim</u>

Defendants argue that AMSI should be precluded from presenting its copyright infringement claim at trial because AMSI failed to obtain expert testimony regarding the source code and other technical matters.  (LFD Supp. Mem. at 19.)  Defendants' argument is unpersuasive.  While this Court previously found that expert testimony "may" be necessary to evaluate properly the substantial similarity of the two software programs (March Order at 14), the Court did not hold that AMSI's copyright infringement claim could not proceed without expert testimony.  Furthermore, in its March Order, the Court found that Plaintiff had proffered sufficient evidence regarding the similar functionality of the two software programs, as well as the intention of Defendants to copy the LTLS software functions, to create a triable issue of fact concerning its copyright infringement claim.  (<u>Id.</u> at 16.)  The preclusion request is, in effect, a belated motion for reconsideration of the Court's denial of Defendants' summary judgment motion, and it is denied.

<u>Prior Litigations</u>

Defendants move for a pretrial ruling regarding the admissibility of evidence RHCR seeks to introduce regarding AMSI's prior litigations with various non-parties.  (LFD Supp. Mem. at 16-17; Pl. Opp. Mem. at 11-12.)  Evidence of past acts is inadmissible under Rule 404 of the Federal Rules of Evidence if offered "to prove a person's character in order to show that on a particular occasion that person acted in accordance with the character."  Fed. R. Evid.

404(b)(1).  Such evidence is admissible, however, "for another purpose, such as proving . . . knowledge . . . absence of mistake, or lack of accident."  Id. 404(b)(2).

RHCR proposes to introduce evidence of two prior lawsuits involving AMSI in 2010 (the "RWK Action") and 2019 (the "DNCT Action") to show that AMSI had knowledge of Rakamaric's LT Work Software as early as 2010.  (LFD Supp. Mem. at 17; see also docket entry nos. 424-7 (the "RWK Filings"), 424-8 (the "DNCT Filings.").)  Defendants assert that the pleadings in those cases refute AMSI's claims that Rakamaric would have needed to access AMSI's LTLS software on RHCR's server in 2016 to create his LT Work Software.  (LFD Supp. Mem. at 17.)  Defendants also assert that the filings in these prior lawsuits (1) "corroborate the veracity" of the Defendants' claim that they had to plan the termination of the AMSI license in secret to "avoid AMSI abruptly shutting down their business," and (2) "serve to refute the baseless claims of AMSI in this case that it was somehow forced to abruptly terminate RHCR's access to its software to protect itself," by showing that AMSI's actions were a "tried and true tactic" frequently employed.  (Id. at 17-18.)

In response, AMSI argues that Defendants mischaracterize the prior litigations and that the evidence of prior litigations is unnecessary because AMSI "has conceded its awareness that Mr. Rakamaric had a software product in 2010."  (Pl. Opp. Mem. at 12.)

Defendants correctly argue that the Court may take "judicial notice" of a document filed in another court "not for the truth of the matters asserts in the other litigation, but rather to establish the fact of such litigation and related filings."  (See LFD Supp. Mem. at 17 (quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998).)  Defendants' arguments for admission, however, seem to seek admission of the statements within the pleadings as substantive evidence against AMSI.  (Id.)  In light of the

inconsistent purposes for which Defendants request admission of these documents, the Court denies Defendants' motion without prejudice to renewal at trial based on <u>specific</u> proffers of documents from these prior actions, accompanied by a clear explanation of the purpose for which they are being offered, including whether they are being offered for their truth or for some other purpose, and subject to any specific objections from Plaintiff including, but not limited to, hearsay and Rules 403 and 404.

<u>Witness Sequestration</u>

Finally, Defendants request an order sequestering AMSI's witnesses during the trial under Rule 615(a) of the Federal Rules of Evidence.  (Def. Supp. Mem. at 21-22.)  Rule 615 requires sequestration of witnesses "at a party's request," unless an enumerated exception, including party representative status, applies.  Fed. R. Evid. 615(a).  AMSI argues first that Antonia Traina is "essentially the plaintiff in this case," as AMSI's owner and president, and that her presence is essential to ensure she can assist in the preparation of any cross examinations or rebuttal testimony.  (Pl. Opp. Mem. at 17.)  The Court understands AMSI's argument as indicating that Traina will be the party representative at trial.  LFD fails to respond to, and thus seems to concede, this argument in reply.  (<u>See</u> LFD Reply Mem. at 10.)  Therefore, the sequestration motion is denied with respect to Traina.

AMSI offers no substantive argument to exempt Iuri Reimer from sequestration. Therefore, Defendants' motion is granted with respect to Iuri Reimer, who is ordered to be sequestered during trial.

AMSI Motion

AMSI moves for a pretrial ruling finding that certain videos AMSI proffered are admissible at trial as either substantive evidence or illustrative aids; AMSI further moves for pretrial rulings precluding Defendants from (1) asserting unpled affirmative defenses and "defenses that were rejected by the Court in its [March 2022 Order]," and (2) introducing at trial any documentary evidence not produced in discovery.  (AMSI Motion; docket entry no. 421 ("Pl. Supp. Mem.") at 1; Pl. Opp. Mem. at 11-12.)

Screenshots and Videos

Plaintiff requests a preliminary ruling that it may offer as evidence 45 short videos comprised of various screenshots of the two software programs, overlayed with audio descriptions (Pl. Supp. Mem.; see also docket entry no. 421-1), as either substantive evidence or illustrative aids.[6]  Defendants have opposed Plaintiff's motion, arguing that the videos should be found inadmissible.  (LFD Opp. Mem. at 3-13.)

Substantive Evidence

AMSI first seeks a preliminary ruling that the videos are admissible at trial as substantive evidence in support of AMSI's copyright infringement claims.  (Pl. Supp. Mem. at 2-

---

[6]    The December 1, 2024 amendments to the Federal Rules of Evidence clarify the distinction between evidence summarizing other voluminous evidence, which is admissible under Rule 1006 subject to ordinary admission criteria, and "illustrative aids," governed by the new Rule 107, that are not offered as evidence but are used to assist the trier of fact in understanding evidence of record.  See Fed. R. Evid. 1006 ("The court may admit as evidence a summary, chart or calculation . . ." (emphasis added)); see also Fed. R. Evid. 107 advisory committee's note to 2024 amendment ("An illustrative aid is a presentation offered not as evidence but rather to assist the trier of fact in understanding evidence or argument.  'Demonstrative evidence' is a term better applied to substantive evidence offered to prove, by demonstration, a disputed fact.").  Illustrative aids, which the courts have previously regulated pursuant to the broad standards of Rule 611(a), are now to be regulated by the more particularized requirements of Rule 107.  Fed. R. Evid. 107.  In this motion practice, the Court applies the updated Rules and considers AMSI's

4.)  Defendants oppose the application, arguing that the videos are inadmissible as substantive

evidence because they (1) were not produced in discovery, (2) contain audio narrations that

constitute inadmissible hearsay, (3) contain audio narrations that constitute impermissible expert

testimony, and (4) cannot be authenticated.  (LFD Opp. Mem. at 4-11.)  Summarizing evidence

may be admissible "as evidence" "to prove the content of voluminous admissible writings,

recordings, or photographs that cannot be conveniently examined in court, whether or not they

have been introduced into evidence."  Fed. R. Evid. 1006.  Evidence admitted under Rule 1006

must still satisfy all ordinary admission criteria, including proper authentication.  See Fed. R.

Evid. 901.

　　　　　The Court first finds that the audio narration aspect of the videos constitutes

inadmissible hearsay.  While, as AMSI contends, the visual content of the videos appears to

"consist entirely of content contained in AMSI's LTLS Software and the Rakamaric Software,"

the audio narration includes descriptions of the functionality of the software and — most

concerningly — technical comparisons of similarities in the structure and functions of the two

programs (including repeated commentary regarding a "mathematically infinitesimal" likelihood

of such similarities happening by chance).  AMSI argues that these videos are not hearsay

because they are narrated by and will be presented with witnesses who will be "on the stand

subject to cross examination" at trial (Pl. Supp. Mem. at 4), but AMSI fails to identify the

narrator-witnesses whose voices are allegedly on the audio tracks or to account for the seemingly

AI-generated voices on at least 15 of the videos with file names labeled "invideo-ai."  Even if the

---

request as one for admission of the videos as substantive evidence under Rule 1006.  To
the extent that AMSI argues, in the alternative, for the videos to be "admissible" as so-
called "demonstrative evidence," the Court considers that to be a request for permission
to use the videos as non-evidentiary illustrative aids under the new Rule 107.

narrators were available to testify, AMSI's argument that the Court should admit the prerecorded, out-of-court statements of its fact witnesses finds no justification in the law. AMSI provides no justification for its assertion that these statements are not hearsay, and points to no hearsay exception under which the statements could be admissible. (See Pl. Supp. Mem. at 4; docket entry no. 434 ("Pl. Reply Mem.") at 8.) Furthermore, to the extent that AMSI's fact witnesses were involved in the recorded narration and are available to testify at trial, AMSI suffers no prejudice from the exclusion of their recorded narration, which these witnesses can simply provide during trial to the extent that narration is comprised of facts to which the witnesses are competent to testify.

For these reasons, the Court denies AMSI's motion to admit audio aspects of the proffered videos into evidence.

The Court next considers AMSI's request for admission of the visual component of the proffered videos. AMSI argues that the videos are visual representations depicting underlying parts of the two software programs and, thus, should be admissible as substantive evidence. (Pl. Supp. Mem. at 3.) The Federal Rules allow the use of evidence to summarize the content of voluminous evidence "that cannot be conveniently examined in court." Fed. R. Evid. 1006. The party offering such summarizing evidence must make the underlying evidence "available for examination or copying, or both, by other parties at a reasonable time and place." Id. Such summarizing evidence is often found admissible for the purpose of illustrating and clarifying a witness's testimony. Boykin v. Western Exp., Inc., No. 12-CV-7428-NSR, 2016 WL 8710481, at *5 (S.D.N.Y. Feb. 5, 2016). Although Defendants argue that the videos were not produced in discovery, AMSI asserts that the visual depictions are based on documents and materials exchanged in discovery. (LFD Opp. Mem. at 4-5; Pl. Supp. Mem. at 3.) Therefore, to

the extent the videos' screenshots are based on materials and documents properly produced in discovery, Plaintiff will be permitted to proffer the videos at trial (without their audio components) as summarizing evidence comparing the key features of the two software programs, subject to proper introduction and authentication of the underlying visual components by admissible lay testimony from witnesses with knowledge.[7]  This determination is without prejudice to any relevant objections to the videos' introduction at trial.

<u>Videos as Illustrative Aids</u>

In the alternative, AMSI argues that the videos should be deemed admissible as "demonstrative evidence," under Rule 611(a), which, under the amended rules, is now better described as "illustrative aids" governed by Rule 107.  (Pl. Supp. Mem. at 5-9); <u>see</u> <u>also</u> Fed. R. Evid. 107.  The amended Rule 107 provides, "[t]he court may allow a party to present an illustrative aid to help the trier of fact understand the evidence or argument if the aid's utility in assisting comprehension is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time."  Fed. R. Evid. 107(a).  Plaintiff persuasively argues that the videos might "illuminate the record and assist the Court in understanding the issues of the case."  (Pl. Supp. Mem. at 5.)  Therefore, AMSI may, in the alternative, proffer the visual component of the videos as non-evidentiary illustrative aids,

---

[7]    Defendants broadly argue that AMSI should be precluded from proffering "computer screenshots" at trial to the extent that it cannot authenticate them.  (Def. Supp. Mem. at 13.)  This objection, however, is premature.  <u>See</u> <u>Wechsler v. Hunt Health Sys., Ltd.</u>, No. 94-CV-8294-PKL, 2003 WL 21998985, at *1 (S.D.N.Y. Aug. 22, 2003).  AMSI will have the opportunity to attempt to authenticate any specific screenshots it seeks to use as evidence at trial, subject to the ordinary admissibility criteria.

subject to any further defense objections.  The audio components of the videos, which are

essentially testimonial, may not be offered as substantive evidence or as illustrative aids.

    <u>Affirmative Defenses</u>

        Next, AMSI seeks an order precluding the Law Firm Defendants from introducing

documents that support affirmative defenses that were either (1) "rejected" in the Court's

Memorandum Opinion and Order denying Defendants' motion for summary judgment (<u>see</u>

March Order), or (2) not pled in LFD's answer to the Third Amended Complaint (<u>see</u> docket

entry no. 177).  (Pl. Supp. Mem. at 9, 13.)

        <u>"Rejected" Defenses</u>

        AMSI first contends that the Court considered, and rejected, the legal arguments

raised in LFD's motion for summary judgment asserting affirmative defenses to Plaintiff's

copyright infringement claim under the Fair Use doctrine, the Essential Step doctrine, and the

Maintenance and Repair exception.  (Pl. Supp. Mem. at 9.)  Plaintiff argues that "these defenses

were rejected" and "the Court made it clear that the facts asserted by Defendants render these

defenses invalid as a matter of law."  (<u>Id.</u> at 9-10.)  Plaintiff's reading of the Court's decision is

erroneous and misstates the standard of review utilized at the summary judgment stage.  In its

March Order, the Court found, viewing the record in the light <u>most favorable to AMSI</u>, that the

record presented a triable issue of fact pertaining to AMSI's copyright infringement claim.  The

Court found that Defendants were not entitled to summary judgment because a "reasonable jury,

imputing all inferences in Plaintiff's favor" <u>could</u> find that the presented affirmative defenses

were invalid.  (March Order at 23, 26, 27.)  The Court did not render a final judgment regarding

Plaintiff's copyright infringement claims or LFD's affirmative defenses.

Unpled Defenses

AMSI next argues that LFD failed to plead the affirmative defenses of the
"Essential Step doctrine" and the "Maintenance and Repair exception" in its Answer to the Third
Amended Complaint, as required under Rule 8(c), raising them for the first time in its 2022
summary judgment motion, and should accordingly be precluded from presenting evidence
relating to those defenses at trial.  (Pl. Supp. Mem. at 13.)  LFD did not respond to this argument.
(See LFD Opp. Mem.)  In general, "[f]ailure to plead an affirmative defense in the answer results
in the waiver of that defense and its exclusion from the case."  Sompo Japan Ins. Co. of Am. v.
Norfolk S. Ry. Co., 762 F.3d 165, 176 (2d Cir. 2014).  Given their failure to respond to Plaintiff's
argument, Defendants are deemed to concede the issue.  See Curry Mgmt. Corp. v. JPMorgan
Chase Bank, N.A., 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022).

For the foregoing reasons, AMSI's motion is granted with respect to the
affirmative defenses not pled in LFD's Answer to the Third Amended Complaint, and the Law
Firm Defendants are precluded from presenting either affirmative defense (the Essential Step
exception and the Maintenance and Repair exception) at trial.  AMSI's motion is denied with
respect to Defendants' appropriately pled affirmative defense under the Fair Use doctrine.

Unproduced Evidence and Undisclosed Witnesses

AMSI also seeks an order precluding the Law Firm Defendants from introducing
at trial "any documentary evidence not produced in discovery . . . [as well as] any witnesses not
disclosed in discovery."  (Pl. Supp. Mem. at 10.)  As discussed above, the remedy for a party's
failure to comply with Rule 26(a) is preclusion of the that evidence at trial pursuant to Rule
37(c)(1), unless the failure to comply was "substantially justified or harmless."  Fed. R. Civ. P.
37(c)(1).  AMSI's request to preclude these broad categories of evidence is overly broad, vague,

and contrary to the Federal Rules.  <u>Viada</u>, 2005 WL 3435111, at *1; <u>Bovell</u>, 2023 WL 3559544, at *8.  It would be impossible for the Court to perform the requisite analysis for AMSI's broad preclusion request "without more information about what, precisely, [Plaintiff is] attempting to preclude, or for what purpose [Defendants] might be attempting to introduce such information." <u>Id.</u>, 2023 WL 3559544, at *8.  AMSI's motion is therefore denied in this respect and without prejudice to any timely objections to specific evidence at trial.

C<small>ONCLUSION</small>

For the foregoing reasons, the parties' motions <u>in limine</u> are resolved as set forth herein and as summarized below:

LFD's motion is granted in part to the extent it seeks the following rulings: AMSI is precluded from (1) offering the testimony of any fact witnesses not identified in their Rule 26(a)(1) disclosures and from proffering evidence of a license agreement with SBT or "the full, complete copy" of the LTLS computer code, (2) proffering the testimony of either Antonia Traina or Iuri Reimer as expert witnesses, (3) proffering evidence of actual damages other than licensing fee computations properly disclosed to Defendants (<u>i.e.</u>, evidence of damages for Plaintiff's "development costs" and estimates of Defendants' revenues and profits from sale and use of the LT Work software is precluded for failure to make proper disclosure), and (4) proffering evidence from the Wachter consent injunction as evidence to prove Defendants' liability.  Furthermore, AMSI's witness Iuri Reimer will be sequestered at trial.

LFD's motion is denied in all other respects.  LFD's motion to preclude AMSI's additional evidentiary proffers and claims is denied without prejudice to appropriate objections at

trial.  LFD's motion for a preliminary ruling that it may proffer evidence from AMSI's prior litigations is denied without prejudice to renewal at trial.

AMSI's motion is granted in part to the extent it seeks the following rulings: AMSI will be permitted to attempt to introduce its video submissions at trial as substantive evidence under Rule 1006, <u>without their audio components</u>, subject to a final determination of admissibility following proper authentication and consideration of any relevant defense objections.  In the alternative, AMSI will be permitted to use the videos (<u>without</u> the audio components) as illustrative aids, subject to consideration of any further defense objections. Additionally, Defendants are precluded from asserting their unpled affirmative defenses to AMSI's copyright infringement claim, the Maintenance and Repair exception and the Essential Step exception, at trial.

AMSI's motion is denied in all other respects without prejudice to appropriate objections at trial.

This Memorandum Order resolves docket entry nos. 420, 421, and 422.

SO ORDERED.

Dated: New York, New York
       December 4, 2024

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge