UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

AUTOMATED MANAGEMENT
SYSTEMS, INC.,

       Plaintiff,

  -v-                                           No.  16-CV-04762-LTS-JW

RAPPAPORT HERTZ CHERSON
ROSENTHAL, P.C., WILLIAM
RAPPAPORT, STEVEN M. HERTZ, ELIOT
J. CHERSON, MICHAEL C. ROSENTHAL,
BRANKO RAKAMARIC, and BEN
WACHTER,

       Defendants.
-------------------------------------------------------x

## Memorandum Order

Defendants Rappaport Hertz Cherson Rosenthal, P.C. ("RHCR"), William Rappaport, Steven M. Hertz, Eliot J. Cherson, and Michael C. Rosenthal (together, the "Law Firm Defendants") and Branko Rakamaric ("Rakamaric") (collectively, with the Law Firm Defendants, ("Defendants")) bring this motion for sanctions, pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure, premised on Plaintiff's alleged violations of the March 9, 2020 Protective Order (docket entry no. 192 (the "Protective Order")) in this action. (Docket entry no. 439 (the "Motion").) Defendants move for an order dismissing Plaintiff's Third Amended Complaint and awarding Defendants attorneys' fees and costs or, in the alternative, granting Defendants an award of attorneys' fees and costs associated with the prior motions for summary judgment in this matter and granting them leave to file a new motion for summary judgment against AMSI.

The Court has reviewed the parties' submissions carefully and, for the following reasons, denies in part and grants in part the Motion.

BACKGROUND

Familiarity with the general context and procedural history of the case is assumed for the purposes of this Memorandum Order. Here, the Court provides an overview of the facts relevant to the instant motion practice. Unless otherwise indicated, the following facts are undisputed.

AMSI brings this action asserting claims for copyright infringement; trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"); unfair competition; breach of contract against RHCR for alleged misappropriation/copying of allegedly confidential information; and tortious interference with contract (against Rakamaric). (Docket entry no. 170 ("TAC").) AMSI's trade secrets claim is premised upon its allegedly proprietary "source code, object code and overall program," the Landlord Tenant Legal System ("LTLS" or "AMSI Software"), which AMSI alleged it undertook "reasonable methods" to keep secret. (Id. ¶¶ 83, 84.)

On March 9, 2020, Magistrate Judge Fox entered a Protective Order in this action, governing the treatment of confidential and proprietary information "filed with the Court, produced or disclosed by any party or non-party . . . including but not limited to computer source code, computer program contents and output . . . ." (Protective Order at 1.) The Protective Order provided, in relevant part, that any material designated as "Confidential Information" as well as "copies or extracts therefrom, and compilations and summaries thereof" may only be made available or communicated to select groups of individuals involved in the case. (Id. ¶ 3.)

In October of 2024, the parties filed their pretrial motions in limine. As part of its motion, AMSI provided a flash drive to the Court, which held 34 videos and 11 links to YouTube videos (uploaded to the account of Schmuel Judkovitz, an "programmer for AMSI" (docket entry no. 446 ¶ 12)) depicting visual comparisons of the database tables, variables, and functions of AMSI's LTLS Software and Rakamaric's LT Work Software (the "Rakamaric Software"). (See docket entry no. 421.) At the December 5, 2024 pretrial conference, RHCR's counsel raised concerns about the process by which the videos had been made, including whether any confidential information subject to the Protective Order was provided to third parties. The Court ordered the parties to meet and confer regarding, among other things, the creation of the videos and any alleged violations of the Protective Order. Defendants subsequently initiated this motion practice.

The forty-five videos include at least 15 videos made with Invideo-AI ("Invideo"), an AI video generating platform. The Terms of Service displayed on the platform provide that users grant Invideo an "irrevocable, perpetual, non-exclusive, royalty-free and fully paid, worldwide license (with the right to sublicense) to access, use, reproduce, electronically distribute, transmit, perform, format, display, store, archive, and index the Customer Content/Output generated using your Customer Content." (Docket entry no. 439-7.) The Terms of Service further state that Invideo "may also use Customer Content/Output generated using your Customer Content for the purpose of supporting and developing and further improving the Services." (Id.; see also docket entry no. 439-2 ("O'Connor Decl.") ¶ 47.) Iuri Riemer, AMSI's Chief Programmer and system analyst, has proffered a declaration stating that he created "a set" of the videos "several years ago" using content from both AMSI's LTLS Software and Rakamaric's LT Work software which was obtained not through discovery but from RHCR's

computer network in 2016, and that he "created additional videos more recently." (Docket entry no. 446 ("Riemer Decl.") ¶¶ 5-6.) The parties have not provided any additional evidence pertaining to the process or timing of the videos' creation.

DISCUSSION

Defendants assert that Plaintiff violated the Protective Order by sharing confidential information regarding Rakamaric's Software with a third-party AI platform and by publicly disseminating the video summaries depicting pieces of Rakamaric's software by uploading them to YouTube, lodging them with Invideo-AI, and providing access information in its public filings with the Court. (Docket entry no. 439-1 ("Def. Mem.") at [pincite].) Defendants further assert that Plaintiff waived its trade secret claims by publicly disseminating the proprietary and confidential information underlying the claims. (Id. at 15.)

Rule 26(c) of the Federal Rules of Civil Procedures provides for the issuance of protective orders governing discovery. Fed. R. Civ. P. 26(c). "The failure to abide by [such an order] is sanctionable under Rule 37." City of Almaty, Kazakhstan v. Ablyazov, No. 15-CV-5345-AJN-KHP, 2018 WL 1229730, at *4 (S.D.N.Y. Mar. 5, 2018). The Court has wide discretion to order appropriate sanctions under Rule 37(c). Anhui Konka Green Lighting Co. v. Green Logic Led Elec. Supply, Inc., No. 18-CV-12255-MKV-KHP, 2021 WL 807209, at *2 (S.D.N.Y. Mar. 3, 2021). Sanctions imposed must be "'just' and 'relate to the particular claim to which the discovery order was addressed.'" City of Almaty, 2018 WL 1229730, at *4 (quoting Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1364 (2d Cir. 1991)). "It is basic law that a civil contempt sanction must only be compensatory or coercive, and may not be punitive." Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 144 (2d Cir. 2014). Exercise of the Court's discretion in determining an award of sanctions must be guided by

several factors, including: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." Funk v. Belneftekhim, 861 F.3d 354, 366 (2d Cir. 2017).

Defendants assert that Plaintiff violated the Protective Order in two ways. First, Defendants assert that Plaintiff provided confidential, proprietary information, relating to the source code of Rakamaric's Software, to Invideo-AI, a third party outside of the scope of the permitted recipients delineated in the Protective Order. Next, Defendants assert that the videos Plaintiff created, shared on YouTube and filed publicly with the Court in their October 11, 2024 motion in limine contained confidential information relating to Rakamaric's source code.

Defendants have not shown clearly that AMSI provided confidential information and source code to Invideo-AI in violation of the Protective Order. Before imposing sanctions under Rule 37(b)(2) for violations of the Protective Order, the Court must first find that there was "a valid court order in force" at the time of the alleged violation. Daval Steel, 951 F.2d at 1364. The only witness on record involved with the making of the videos, Iuri Riemer, has proffered that he "upload[ed] data from the LTLS Software and the Rakamaric LT Work software into Invideo AI" (Riemer Decl. ¶ 5), that he created "a set" of the videos "several years ago . . . using AMSI's LTLS Software and the Rakamaric Software that James Traina and [Riemer] found residing on the Law Firm Defendants' computer network in 2016," (id. ¶ 6), and that he "created additional videos more recently" (id.). From the record before the Court, it is unclear exactly what confidential information belonging to the Defendants was disclosed to Invideo-AI (or any other third parties outside of the scope of the Protective Order) and when those disclosures may have occurred in relation to the March 9, 2020 entry of the Protective Order. Mr. Riemer alleges

that he had been in possession of Defendants' source code since 2016, years before entry of the Protective Order.  If Mr. Riemer provided the source code information to Invideo prior to March 9, 2020, he cannot be found in violation of that Order for that conduct.  Therefore, from this factual record, the Court is unable to find clear evidence of a violation of the Protective Order based on AMSI's alleged provision of Rakamaric's confidential information to Invideo-AI.

The Court does, however, find a clear violation of the Protective Order based on the videos AMSI prepared for trial, submitted to the Court without a request for sealing, and shared with third parties (including Schmuel Judkovitz, YouTube, and Invideo-AI), which contain "extracts . . . compilations and summaries" of the confidential information from Rakamaric's source code in violation of the Protective Order.  (Protective Order ¶ 3; see generally AMSI videos.)  The Court finds that these violations took place after the Protective Order was in effect, and that Plaintiff's non-compliance took place over "several years" (Riemer Decl. ¶ 5) before Plaintiff made any attempt to rectify the violation by removing the YouTube videos.  (See docket entry no. 443 ("Pl. Mem.") at 16.)

Having found a clear violation of the Protective Order, the Court must decide what sanctions are appropriate under these circumstances.  The Court finds no justification, on the current record, to award terminating sanctions for a violation that does not prejudice Defendants' ability to defend any claims in this case.  See Nycomed U.S. Inc. v. Glenmark Generics Ltd., No. 08-CV-5023, 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010) ("For less severe sanctions, such as fines and cost-shifting, the Court's inquiry focuses mainly on the misconduct of the responding party; for more severe sanctions, such as dismissal . . . the court must also assess whether the requesting party suffered prejudice as a result of the loss or withholding of evidence."); Martens v. Thomann, 273 F.3d 159, 179 (2d Cir. 2001) ("The remedy

[of dismissal for a failure to prosecute] is pungent, rarely used, and conclusive. A district judge should employ it only when [s]he is sure of the impotence of lesser sanctions."). Due to the lack of such prejudice to Defendants notwithstanding the clear evidence of misconduct by Plaintiff, the Court finds less severe sanctions are appropriate. Considering the clear and convincing evidence that Plaintiff acted in violation of the Protective Order, concealed that action for several years, and thereby necessitated that Defendants expend time and resources to bring this issue to the Court's attention, the Court orders that Plaintiff pay all fees and costs associated with this motion practice.

Defendants' motion is denied in all other respects.

The Court will, by separate order, direct Plaintiff to show cause as to why the Court should not dismiss its trade secret claims in light of this new evidence of its disclosure of its purportedly secret information.

## CONCLUSION

For the foregoing reasons, the Court awards the Law Firm Defendants their attorney's fees and expenses associated with bringing this motion. Any motion for determination of the amount of the fees must be filed, after meeting and conferring with Plaintiffs' counsel as required by the undersigned's individual practices, within 90 days of the date hereof and must be accompanied by appropriate time records. The Court denies all other requested relief.

This Memorandum Order resolves docket entry no. 439. The final pretrial conference currently scheduled for 11:30 a.m. on January 10, 2025, will proceed as scheduled.

SO ORDERED.

Dated: New York, New York
January 7, 2025

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge